Case No. 23-10534

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

In the Matter of: Highland Capital Management, L.P.,

      Debtor.

---

Highland Capital Management Fund Advisors, L.P., now known as NexPoint Asset Management, L.P.; NexPoint Advisors, L.P.,

      Appellants,

v.

Highland Capital Management, L.P.,

      Appellee.

---

## APPELLANTS' OPENING BRIEF

---

Direct Appeal from the United States Bankruptcy Court for
the Northern District of Texas, the Honorable Stacey G.C. Jernigan

Davor Rukavina, Esq.
**MUNSCH HARDT KOPF & HARR, P.C.**
500 North Akard St., Ste. 3800
Dallas, Texas  75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

**ATTORNEYS FOR NEXPOINT ASSET
MANAGEMENT, L.P. and
NEXPOINT ADVISORS, L.P.**

Case No. 23-10534

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

In the Matter of: Highland Capital Management, L.P.,

    Debtor.

---

Highland Capital Management Fund Advisors, L.P., now known as NexPoint Asset Management, L.P.; NexPoint Advisors, L.P.,

    Appellants,

v.

Highland Capital Management, L.P.,

    Appellee.

---

## CERTIFICATE OF INTERESTED PERSONS

---

       The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

    1.    **Appellants filing this brief**:

       **NexPoint Advisors, L.P.**
          Owned by:
               The Dugaboy Investment Trust
               NexPoint Advisors GP, LLC
                  Owned by:
                     James Dondero

**Highland Capital Management Fund Advisors, L.P., now known as NexPoint Asset Management, L.P.**
      Owned by:
            Highland Capital Management Services, Inc.
            Strand Advisors XVI, Inc.
            Okada Family Revocable Trust

<u>Counsel</u>:
Davor Rukavina, Esq.
Julian P. Vasek, Esq.
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard Street, Ste. 3800
Dallas, Texas 75201-6659

**2.**    <u>**Appellee**</u>**:**

**Highland Capital Management, L.P.**

      <u>Counsel</u>:
      Melissa Sue Hayward, Esq.
      Zachery Z. Annable, Esq.
      Hayward P.L.L.C.
      10501 N. Central Expy. Ste. 106
      Dallas, TX 75231

      Jeffrey N. Pomerantz
      John A. Morris
      Pachulski Stang Ziehl & Jones, LLP
      10100 Santa Monica Boulevard, 13th Floor
      Los Angeles, CA 90067

      By:  /s/ Davor Rukavina
            Davor Rukavina, Esq.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

This Appeal concerns the ability of a bankruptcy court to enter a permanent injunction prohibiting non-debtors from suing non-debtors for future non-bankruptcy claims without the bankruptcy court first finding that the suit is "colorable" and authorizing the suit, even if the bankruptcy court has no jurisdiction over the suit. This Appeal is therefore important to bankruptcy jurisdiction, Constitutional jurisprudence, and the Bankruptcy Code. This Appeal is also important to the sacrosanct rights of the Appellants to seek legal redress through the courts, which rights are severely limited, if not practically foreclosed, by the bankruptcy court's injunction. Because of the importance of these issues, and because the Appellants believe that oral argument may be of assistance to the Court, they respectfully request that the Court grant oral argument in this Appeal.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................v

I.    STATEMENT OF JURISDICTION ..............................................1

II.   STATEMENT OF THE ISSUES ...................................................2

III.  STATEMENT OF THE CASE .......................................................2

      A.    OVERVIEW   ..........................................................................2
      B.    THE PARTIES ........................................................................3
      C.    THE CHAPTER 11 PLAN .......................................................4
      D.    THE FIRST APPEAL ...............................................................8
      E.    *HIGHLAND I* AND OPINION ON REHEARING ..........................9
      F.    POST-REMAND PROCEEDINGS  ...........................................11

IV.   SUMMARY OF THE ARGUMENT ..............................................13

V.    ARGUMENT...............................................................................17

      A.    THE COURT'S REVIEW IS *DE NOVO* ...................................17
      B.    *HIGHLAND I* REQUIRED THAT THE GATEKEEPER INJUNCTION BE
            COEXTENSIVE WITH THE PLAN EXCULPATION ......................18
      C.    THE APPELLANTS' CONSTRUCTION OF *HIGHLAND I* IS APPROPRIATE
            AND NECESSARY UNDER THE COURT'S PRECEDENT AND THE
            BANKRUPTCY CODE ............................................................26

            1.    This Court's Precedent............................................27
            2.    Section 524(g) of the Bankruptcy Code ..................30
            3.    Bankruptcy Court Lacks Jurisdiction
                Over Gatekeeper Injunction.....................................31

      D.    GATEKEEPER INJUNCTION IS NOT A PROPER
            ANTI-FILING INJUNCTION ...................................................34

VI.   CONCLUSION............................................................................41

# TABLE OF AUTHORITIES

## Cases

*Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 360 (5th Cir. 1986)..................40

*In re Craig's Stores of Tex., Inc.*, 266 F.3d 388, 390 (5th Cir. 2001) ...............31, 32

*In re Patriot Place Ltd.*, 486 B.R. 773 (Bankr. W.D. Tex. 2013) ...........................28

*In re Serta Simmons Bedding LLC*, 2023 WL 3855820 (Case No. 23-90020)
(Bankr. S.D. Tex. June 6, 2023) ........................................................................32, 33

*In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1059-60 (5th Cir. 2012) ........................28

*In the Matter of Carroll*, 850 F.3d 811, 815 (5th Cir. 2017) .............................37, 38

*In the Matter of Highland Capital Management, L.P.*,
48 F.4th 419 (5th Cir. 2002) ...............................................................................*passim*

*In the Matter of The Pacific Lumber Co.*, 584 F.3d 229 (5th Cir. 2009) ............9, 27

*In the Matter of Zale Corp.*, 62 F.3d 746 (5th Cir. 1995).......................................27

*Mantei v. Kansas*, 2018 WL 1895542 at *1 (W.D. Tex. 2018)...............................40

*Milltex Indus. Corp. v. Jacquard Lace Co. Ltd.*, 55 F.3d 34, 39 (2d Cir. 1995).....40

*Nat'l Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*,
86 F.3d 464, 467 (5th Cir. 1996) ............................................................................25

## Statutes

11 U.S.C. § 524(g) .................................................................................................30

11 U.S.C. § 1123(a)(5)............................................................................................28

11 U.S.C. § 1123(b)(6)............................................................................................28

11 U.S.C. § 1141 .....................................................................................................28

11 U.S.C. § 1142(b) ...................................................................................28

28 U.S.C. § 157(b)(2)...............................................................................31

28 U.S.C. § 1334 .....................................................................................31

28 U.S.C. § 158(d)(2)................................................................................2

## APPELLANTS' OPENING BRIEF

NexPoint Advisors, L.P. ("NexPoint") and Highland Capital Management Fund Advisors, L.P., now known as NexPoint Asset Management, L.P. ("HCMFA"), the appellants in this direct bankruptcy appeal (collectively, the "Appellants"), hereby submit this *Opening Brief*, in support of which they would respectfully state as follows:

## I.    STATEMENT OF JURISDICTION

This is the second appeal to this Court, after remand, of the confirmed Chapter 11 plan of Highland Capital Management, L.P. ("Highland" or the "Debtor").  On August 19, 2022, in Case Number 21-10449 (the "First Appeal"), this Court entered its opinion in the First Appeal, as modified by the Court's opinion on rehearing entered on September 7, 2022, the result of which was a remand to the Bankruptcy Court for certain issues related to Highland's Chapter 11 plan.

On February 27, 2023, the Bankruptcy Court entered its *Memorandum Opinion and Order on Reorganized Debtor's Motion to Conform Plan [DE # 3503]* (the "Order Upon Remand"), that is the subject of this Appeal.

The Appellants sought a direct appeal of the Order Upon Remand before this Court, Highland agreed, and the Bankruptcy Court certified the appeal for a direct appeal.  Thereafter, on May 24, 2023, in Case Number 23-90013, this Court granted the requested direct appeal, and opened the present case number for the Appeal.

Accordingly, this Court has jurisdiction over this Appeal under 28 U.S.C. § 158(d)(2) and because the Court originally had appellate jurisdiction over the Confirmation Order in the First Appeal.

## II.    STATEMENT OF THE ISSUES

Whether the Bankruptcy Court erred, as a matter of law, by failing to conform the Confirmation Order to this Court's mandate in the First Appeal, by failing to limit the scope of the Gatekeeper Injunction to protect only those persons and claims properly exculpated under this Court's opinion in the First Appeal.

## III.    STATEMENT OF THE CASE

### A.    OVERVIEW[1]

This is the second appeal, after remand by this Court, of the Bankruptcy Court's Confirmation Order and Plan, in the form of the Order Upon Remand.  At issue is this Court's published opinion in *In the Matter of Highland Capital Management, L.P.*, 48 F.4th 419 (5th Cir. 2002) ("*Highland I*").  Specifically, at issue is whether the Bankruptcy Court properly conformed the Plan to the mandate in *Highland I* by failing to limit the Gatekeeper Injunction to be coextensive with the Plan Exculpation.

---

[1]    Capitalized terms used in this Overview are defined below.

**B.   THE PARTIES**

Highland filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on October 16, 2019.  ROA.758.  Prior to and during its bankruptcy case, Highland managed portfolios and assets worth billions of dollars.  ROA.758.  *See also Highland I*, 48 F.4th at 425.  Among other services, Highland serviced and advised billion-dollar, publicly traded investment funds for appellants Highland Income Fund, NexPoint Strategic Opportunities Fund, Highland Global Allocation Fund, and NexPoint Capital, Inc. (collectively, the "Funds").  *See id*.  Among other things, and on behalf of the Funds, Highland managed multiple investment vehicles known as collateral loan obligations ("CLOs") under individualized servicing agreements.  *See id*.

The Appellants are registered investment advisors and owe fiduciary duties to the funds and other investment vehicles they advise and manage, which amount to billions of dollars.  The Appellants, as investment advisors, also provide services and advice to the Funds, including with respect to Highland's management of the CLOs. *See Highland I*, 48 F.4th at 425.  In sum, the Appellants have a strong interest in ensuring that they can properly advise the Funds and others with respect to Highland's management of the CLOs and other investments, and that the Appellants can take legal action against Highland and others, on behalf of the Funds and others and themselves, in the event that Highland or its agents mismanage investments or

engage in actions or omissions which may give rise to contractual, statutory, or tort causes of actions.

## C.   THE CHAPTER 11 PLAN

On February 22, 2021, the Bankruptcy Court entered its *Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified) and (ii) Granting Related Relief* (the "Confirmation Order"), ROA.752-842, pursuant to which it confirmed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified)* (the "Plan"). ROA.843-912.

The Plan provides for the creation of a creditor trust which would seek to monetize the bankruptcy estate's assets to pay creditors, which assets would include management of the CLOs and other investments. *See Highland I*, 48 F.4th at 426-27. Thus, even though Highland would liquidate over time, it would continue to manage the CLOs and other investments, all of which it expressly assumed under its Plan. ROA.909-912. The Plan therefore implicated the interests of the Appellants, the Funds, the CLOs, and various third parties whose investments Highland manages. And, it opened Highland and its agents to potential future liability for mismanaging those investments or otherwise engaging in actionable conduct or omissions after (and during) the confirmation of the Plan.

Two aspects of the Plan are directly relevant to this Appeal: the Plan Exculpation and the Gatekeeper Injunction.

The "Plan Exculpation" appears in Article IX.C of the Plan, under the label "Exculpation," and provides that:

> no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Petition Date in connection with or arising out of (i) the filing and administration of the Chapter 11 Case; (ii) the negotiation and pursuit of the Disclosure Statement, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan (including the Plan Supplement) or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Plan Distribution of any securities issued or to be issued pursuant to the Plan, including the Claimant Trust Interests, whether or not such Plan Distributions occur following the Effective Date; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation in connection with the foregoing clauses (i)-(iv); provided, however, the foregoing will not apply to (a) any acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct or (b) Strand or any Employee other than with respect to actions taken by such Entities from the date of appointment of the Independent Directors through the Effective Date.

ROA.895-96.

The Plan defines "Exculpated Party" as:

> (i) the Debtor and its successors and assigns, (ii) the Employees, (iii) Strand, (iv) the Independent Directors, (v) the Committee, (vi) the members of the Committee (in their official capacities), (vii) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (viii) the CEO/CRO; and (ix) the Related Persons of each of the parties listed in (iv) through (viii) . . .

ROA.857.  "Related Persons" is defined as:

> predecessors, successors, assigns (whether by operation of law or otherwise), and each of their respective present, future, or former officers, directors, employees, managers, managing members, members, financial advisors, attorneys, accountants, investment bankers, consultants, professionals, advisors, shareholders, principals, partners, subsidiaries, divisions, management companies, heirs, agents, and other representatives, in each case solely in their capacity as such.

ROA.862.

Thus, initially, the Plan Exculpation broadly exculpated many persons, and their agents and other related persons, from and against potential negligence related to the administration of the bankruptcy case and the bankruptcy estate.

The "Gatekeeper Injunction" is in some ways similar and in some ways much broader.  It appears in Article IX.F of the Plan as follows:

> no Enjoined Party may commence or pursue a claim or cause of action of any kind against any Protected Party that arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected Party. . .  The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable.

ROA.898-99 (emphasis added).

The Plan defines "Enjoined Party" as including holders of claims and equity interests against Highland, any party that appeared in the bankruptcy case, and also each "Related Entity." ROA.856. "Related Entity" includes any entity that is an affiliate of James Dondero ("Dondero"). ROA.862. Because the Appellants held claims against Highland, appeared in the bankruptcy case, and are affiliated with Dondero, there is no question that they are "Enjoined Parties" subject to the Gatekeeper Injunction, and there is no question that they have standing to seek relief from that final injunction as enjoined parties.

The Plan defines "Protected Party" as:

> (i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Reorganized Debtor, (v) the Independent Directors, (vi) the Committee, (vii) the members of the Committee (in their official capacities), (viii) the Claimant Trust, (ix) the Claimant Trustee, (x) the Litigation Sub-Trust, (xi) the Litigation Trustee, (xii) the members of the Claimant Trust Oversight Committee (in their official capacities), (xiii) New GP LLC, (xiv) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (xv) the CEO/CRO; and (xvi) the Related Persons of each of the parties listed in (iv) through (xv).

ROA.861.

Thus, the Gatekeeper Injunction is a final, extraordinarily broad injunction, that protects a large list of persons and entities, and their agents and employees, from and against virtually any claim and cause of action, including the post-confirmation business of Highland and the various trusts created under the Plan. A party seeking

relief from the Gatekeeper Injunction must first demonstrate to the Bankruptcy Court—and *only* the Bankruptcy Court—that it has a "colorable" claim *and* it must obtain specific authorization from the Bankruptcy Court—and *only* the Bankruptcy Court—to bring any such claim.

## D.    THE FIRST APPEAL

Many parties, including the United States Trustee, objected to the Plan, based largely on the Plan Exculpation and the Gatekeeper Injunction, all of such objections the Bankruptcy Court overruled through the Confirmation Order, and the Plan became effective.  Many parties appealed the Confirmation Order to this Court, including the Funds and the Appellants, in the form of the First Appeal.  *See Highland I*, 48 F.4th at 428.

The Appellants advanced several arguments for why the Confirmation Order should be vacated.  Some of these arguments related to technical confirmation requirements under the Bankruptcy Code and were rejected by this Court, and are not the subject of (or relevant to) this Appeal.  *See Highland I*, 48 F.4th at 432-434. However, the Appellants (and others) also expressly appealed the Plan Exculpation and Gatekeeper Injunctions to this Court, and it can fairly be stated that these issues predominated the First Appeal.  *See id*. at 435.

The primary appellate argument advanced by the Appellants (and others) was that the Plan Exculpation exceeded the permissible scope of exculpation as

previously determined by this Court in *In the Matter of The Pacific Lumber Co.*, 584 F.3d 229 (5th Cir. 2009) ("*Pacific Lumber*"), which had limited the scope of a permissible exculpation only to the debtor itself and to the members of an official committee of unsecured creditors. *See Highland I*, 48 F.4th at 435-438.

The Appellants (and others) advanced substantially the same arguments against the Gatekeeper Injunction, in that its scope was too broad with respect to the persons protected, and also that its scope was too broad temporally, since the Gatekeeper Injunction, unlike the Plan Exculpation, operated prospectively to post-confirmation business actions and omissions while the Plan Exculpation operated retrospectively to actions and decisions taken in the bankruptcy case itself. *See Highland I*, 48 F.4th at 438-439. Importantly, the Appellants also argued that the Bankruptcy Court would have no subject matter jurisdiction for post-confirmation matters, as there would no longer be a bankruptcy estate, and therefore no jurisdiction either to enjoin a prospective action or to make a decision as to whether any claim was "colorable." *See id.* at 439.

**E.    *HIGHLAND I* AND OPINION ON REHEARING**

The Court issued its first opinion in the First Appeal on August 19, 2022. ROA.936-965. The Court agreed with the Appellants as to the Plan Exculpation and ordered that "[t]he exculpatory order is therefore vacated as to all parties except Highland Capital, the Committee and its members, and the Independent Directors

for conduct within the scope of their duties." ROA.964-65. The Court remanded the matter to the Bankruptcy Court for further proceedings consistent with its opinion. *See id.*

The issue with respect to the Gatekeeper Injunction was not as clear. On the one hand, the Court originally stated that "[t]he injunction and gatekeeper provisions are . . . perfectly lawful." ROA.962. Yet this exceeded, and seemingly contradicted, the Court's holding with respect to the Plan Exculpation, since only the debtor, committee members, and independent directors could be protected against the claims of third parties (anything else constituting an impermissible, nonconsensual third-party release of the type prohibited by *Pacific Lumber*). And, the Court concluded that "the Plan violates § 524(e) but only insofar as it exculpates and <u>enjoins</u> certain non-debtors." ROA.964 (emphasis added).

Believing that there was uncertainty in the Court's opinion with respect to the Gatekeeper Injunction, the Funds, but not the Appellants, filed a petition for limited panel rehearing, ROA.969, seeking only "an order clarifying the Court's August 19, 2022, opinion solely with respect to the breadth of the injunction and gatekeeper provisions." ROA.976. Specifically, the Funds requested "that the Court narrowly amend the Opinion in order to confirm the Court's holding that the impermissibly exculpated parties are similarly struck from the protections of the injunction and gatekeeper provisions of the Plan." ROA.975.

On September 7, 2022, the Court entered its opinion in *Highland I*, expressly stating that the "petition for panel rehearing is GRANTED." ROA.1012. The sole substantive difference between *Highland I* and the Court's original opinion is the striking of the following sentence:

> "The injunction and gatekeeper provisions are, on the other hand, perfectly lawful,"

and the replacing of that sentence with:

> "We now turn to the Plan's injunction and gatekeeper provisions."

R.E. Tab 9 at p. 28.

### F.     POST-REMAND PROCEEDINGS

On September 9, 2022, Highland filed its *Motion to Conform Plan* (the "Motion"), by which it requested that the Bankruptcy Court conform the Plan to the opinion in *Highland I*. ROA.913-921. The Motion requested that the Plan be modified solely with respect to the scope of the Plan Exculpation and made no mention of any modification to the Gatekeeper Injunction. Specifically, the Motion proposed that the only change to the Plan necessitated by *Highland I* was changing the Plan definition of "Exculpated Parties" to:

> Exculpated Parties' means, collectively, (i) the Debtor, (ii) the Independent Directors, (iii) the Committee, and (iv) the members of the Committee (in their official capacities).

ROA.916.

Because the Motion proposed no changes to the Gatekeeper Injunction as various parties believed that it should in light of *Highland I*, various parties filed objections to the Motion with requests that the Gatekeeper Injunction likewise be modified as to its scope to be coextensive with the Plan Exculpation. The Funds filed such an objection. ROA.926-1048. And, the Appellants (referred to as the "Advisors" below) filed their *Limited Objection of the Advisors to Motion to Conform Plan* (the "Objection"). ROA.1055-1059.

In the Objection, the Appellants incorporated the Funds' response to the Motion and asserted their own objections and their own arguments for why the Bankruptcy Court should modify the Gatekeeper Injunction in addition to the Plan Exculpation. As summarized by the Appellants:

> Thus, amending the Plan only with respect to the definition of "Exculpated Parties" does not comport with the Fifth Circuit's holding because the Plan must also be changed with respect to its injunction and gatekeeper provisions in order to conform to the Final Opinion. As the Funds' Response explains, the Plan's permanent injunction provisions exculpate all included in the defined term "Protected Party." To conform with the Final Opinion, this definition too must change.

ROA.1057.

Highland filed a reply in support of its Motion, ROA.1060-69, and the Bankruptcy Court held a hearing on the Motion on October 26, 2022. ROA.1074-1173. At the conclusion of the hearing, the Bankruptcy Court announced that it

would overrule the objections to the Motion and grant the Motion as presented, without any modification to the Gatekeeper Injunction.  ROA.1168-69.

Highland requested that the Bankruptcy Court issue a written opinion in support of its ruling, which the Bankruptcy Court did on February 27, 2023 with the entry of the Order Upon Remand.  ROA.13-31.  As concluded by the Bankruptcy Court in its Order Upon Remand, *Highland I* required "that one change be made to the Plan to conform it to the mandate of the Fifth Circuit: revise the definition of 'Exculpated Parties' as proposed in the Motion <u>and no more</u>."  ROA.31 (emphasis added).

After the Appellants filed their notice of appeal of the Order Upon Remand to the District Court for the Northern District of Texas, the Bankruptcy Court certified the appeal for a direct appeal to this Court, and this Court granted the direct appeal.  ROA.1207.

## IV.   <u>SUMMARY OF THE ARGUMENT</u>

*Highland I*, consistent with *Pacific Lumber* and other precedent of this Court, clearly holds that a Chapter 11 plan's ability to provide protections to certain persons administering a reorganization against third party claims is exceedingly limited and can extend only to the debtor itself, members of the official committee, and (in this unique instance) the independent directors of the debtor.  *Highland I* struck the otherwise expansive Plan Exculpation and ordered further proceedings consistent

with that opinion.  The lesson could not be clearer: the ability of a bankruptcy court to limit claims held by a non-debtor against a non-debtor is strictly limited to the foregoing, and anything else violates section 524 of the Bankruptcy Code.

Now, in the form of the Gatekeeper Injunction, the Plan does an end-run around *Highland I*, rendering it and its dictates—and those of section 524 of the Bankruptcy Code—meaningless.   What is the point of strictly limiting an exculpation, if a bankruptcy court can do the same through a final injunction, as indeed *Pacific Lumber* noted?  It is no answer to say that a party may seek relief from the Gatekeeper Injunction by demonstrating a "colorable" claim and obtaining discretionary authority from the Bankruptcy Court to proceed—troubling and unworkable as that is.  That is not the point.  The point, as with *Highland I*, is whether the Bankruptcy Court has the jurisdiction and power to issue the Gatekeeper Injunction in the first place.  If the Bankruptcy Court lacks the jurisdiction and power to exculpate third party claims, then it must also lack the jurisdiction and power to enjoin third party claims (even if it takes for itself the exclusive jurisdiction to grant relief from that injunction).

It is important for a moment to consider the broader issues and their implications.   Here, an Article I court with limited *bankruptcy* jurisdiction has entered a permanent injunction prohibiting a non-debtor from suing a non-debtor for *non-bankruptcy* claims, including for future claims having nothing to do with

bankruptcy, and irrespective of whether the claim is a state law claim, a federal law claim, a contract claim, a tort claim, a statutory claim, or a claim giving rise to jury rights, granting to itself *exclusive* jurisdiction to determine whether a claim is "colorable" and the *sole* discretion to authorize the action.

That jurisdiction simply does not exist, and that power is not granted under the Bankruptcy Code and expressly contradicts it. For relief from the injunction, a party must go before a court with no jurisdiction over the underlying matter, when there is no longer a bankruptcy estate and potentially not even an open bankruptcy case, somehow have the case reopened, and then prove, at its peril, that it holds a "colorable" claim *and* obtain approval to proceed. If the Bankruptcy Court finds that the claim is not "colorable," then a court with no subject matter jurisdiction will have made a substantive determination closing the party's right to any and all courtrooms. And whether the Bankruptcy Court authorizes a suit even if the claim is "colorable" appears to be within the sole discretion of the Bankruptcy Court. Respectfully, that is the province of Caesar, not a federal court of this country.

As the Appellants will demonstrate, *Highland I* has already decided the issue by requiring that the Gatekeeper Injunction be coextensive with the Plan Exculpation, and no more. That is the logical, coherent, and consistent reading of *Highland I.* The Appellants will further demonstrate that this conclusion is also consistent with this Court's prior precedent, which has always treated a final plan

injunction and exculpation the same.  The Appellants will also demonstrate that this conclusion is the only one that is compatible with the Bankruptcy Court's subject matter jurisdiction and with basic Constitutional principles.  Finally, anticipating that Highland will argue that the Gatekeeper Injunction can be defended as an anti-filing injunction against vexatious litigants, the Appellants will conclusively demonstrate that the Gatekeeper Injunction does not even purport to be any such injunction and that there are no facts or findings in the record to justify such an extraordinary injunction.

The Appellants advise investors and clients with respect to billions of dollars of their investments, and Highland manages many of those investments.  If Highland mismanages those investments or engages in actionable conduct—especially in the highly regulated and fiduciary environment in which Highland operates—all that the Appellants seek is to ensure unfettered access to proper legal redress and remedies.  That should not be controversial in the slightest.  If the Appellants or anyone else files a groundless or bad faith action against the persons Highland wants protected, then whatever court that such action may be filed before—but at least a court with subject matter jurisdiction over the action—will have every right and ability to correct that.

In the end, it is not the Appellants who are seeking something unusual or who should have to justify themselves, having done nothing wrong to deserve the

Bankruptcy Court taking for itself the keys to all courts.  It is not the Appellants who filed bankruptcy with hundreds of millions of dollars in debt.  It is Highland who seeks something extraordinary, the equivalent of prospective judicial immunity, in the guise of assisting its "reorganization" and maximizing returns to creditors.  It would be quite something new and something else indeed if American Airlines could have obtained for itself such a bankruptcy injunction in its bankruptcy case if one of its planes crashed in the future, or General Motors in its bankruptcy case if one of its mass-marketed products was defective.  This is not hyperbole: the Bankruptcy Court either has the jurisdiction and power to do so, or it does not.  As the Appellants will demonstrate below, the slippery slope has already begun.

## V.     ARGUMENT

### A.     THE COURT'S REVIEW IS *DE NOVO*

This is an appeal of an order entered after remand, testing whether the Bankruptcy Court has properly and faithfully implemented the mandate of *Highland I* and whether the Gatekeeper Injunction is lawful as a matter of law.  Although the Appellants have not been able to locate any published precedent regarding the standard of review that this Court should apply, the Appellants respectfully submit that this Court's review is *de novo*.

## B.    *HIGHLAND I* REQUIRED THAT THE GATEKEEPER INJUNCTION BE COEXTENSIVE WITH THE PLAN EXCULPATION

The Appellants have always maintained that *Highland I* limited the scope of the Gatekeeper Injunction to be coextensive with the Plan Exculpation, and that any other construction would render the holding, language, and spirit of *Highland I* meaningless: if a bankruptcy court can permanently protect someone against claims by injunction, then that is effectively the same as protection by exculpation. Highland and the Bankruptcy Court disagreed, construing *Highland I* as expressly affirming the Gatekeeper Injunction such that no further consideration of the Gatekeeper Injunction on remand was appropriate.

While there is admittedly language in *Highland I* suggesting that the Court did not intend to vacate any of the Gatekeeper Injunction (and hence the request for panel rehearing made by the Funds),[2] reading *Highland I* as a whole, and considering its purpose and its substance, demonstrates otherwise.

First, the Court expressly granted the requested rehearing.   ROA.1012; *Highland I*, 48 F.4th at 424.  The whole purpose of the requested rehearing was for the Court to clarify that its dictates respecting the Plan Exculpation applied equally to the Gatekeeper Injunction.  ROA.975-76.  The Appellants cannot imagine that,

---

[2] "We reverse only insofar as the plan exculpates certain non-debtors in violation of 11 U.S.C. § 524(e), strike those few parties from the plan's exculpation, and affirm on all remaining grounds."  ROA.1012.

being asked to clarify its opinion, this Court would have muddied the waters. Rather, in granting a rehearing and replacing its prior opinion, this Court was clarifying.

What did it clarify? The sole substantive change was the deletion of: "[t]he injunction and gatekeeper provisions are, on the other hand, perfectly lawful," and its replacement with the following sentence: "We now turn to the Plan's injunction and gatekeeper provisions." *Compare* ROA.962 *with* ROA.1038; R.E. 9 at p. 28. Striking the language of "perfectly lawful" appears to be a clear expression of the Court's view that the Gatekeeper Injunction was not perfectly lawful. That was the clarification being given. The Appellants took this change to be the equivalent of 'the Gatekeeper Injunction is not lawful and read our opinion closely and you will see that we so found already and do not need to repeat ourselves.'

Next, *Highland I* addressed the Appellants' argument that "the bankruptcy court's injunction [was] vague and the gatekeeper provision [was] overbroad," stating that "[w]e are unpersuaded." ROA.1038; *Highland I*, 48 F.4th at 438. Yet, when one analyzes the balance of the Court's analysis, it is clear that the Court was unpersuaded not with the arguments or logic of the Appellants, but with the need to address those arguments in light of the Court's striking of the Plan Exculpation. In other words, having stricken the Plan Exculpation, the Court analyzed the Gatekeeper Injunction coextensively with the Plan Exculpation, as is clear from the Court's discussion of the discrete arguments.

This is most evident from the first discrete argument that the Court considered against the Gatekeeper Injunction:

> First, Appellants' primary contention—that the Plan's injunction "is broad" by releasing non-debtors in violation of § 524(e)—is resolved by our striking the impermissibly exculpated parties. See supra Part IV.E.1.

ROA.1038; *Highland I*, 48 F.4th at 438 (emphasis added).

The Appellants do not see how this holding can have any meaning other than that the Gatekeeper Injunction can only extend to the same persons and scope as the Plan Exculpation. Otherwise, there would be no statement that the argument is "resolved," and that it was resolved by "striking the impermissibly exculpated parties." It is difficult to see why the Court would otherwise be "unpersuaded" by the Appellants' argument when the Court otherwise noted that the argument is "resolved." Thus, the Court was "unpersuaded" not because the argument was unpersuasive, but because it was mooted by the striking of the Plan Exculpation.

*Highland I* next considered the Appellants' argument that the Gatekeeper Injunction was too broad because of its application to postconfirmation matters, which the Court rejected because "permanency alone is no reason to alter a bankruptcy court's otherwise-lawful injunction on appeal."[3] ROA.1038; *Highland*

---

[3] Respectfully, the Court missed the Appellants' argument: it was not the permanency that mattered but rather that claims for post-confirmation (and therefore post-bankruptcy) liability were enjoined.

*I*, 48 F.4th at 438.  But here is how the Court phrased the Appellants' argument: "Appellants dispute the permanency of the injunction for the <u>legally exculpated</u> parties by enjoining conduct . . ."  ROA.1038; *Highland I*, 48 F.4th at 438 (emphasis added).  Again, the Court was considering the scope of the Gatekeeper Injunction only as the injunction applied to "legally exculpated" parties and not to any of the other persons protected by the Gatekeeper Injunction.  This can only be so because, as the Court held just before this argument, the Appellants' primary argument "is resolved by our striking the impermissibly exculpated parties."  Thus, there was no need to consider the scope of the Gatekeeper Injunction as applicable to anyone who was not properly exculpated; by not being "legally exculpated" the Court had already necessarily limited the scope of the Gatekeeper Injunction.

The next argument that *Highland I* considered was a technical argument regarding whether the Plan's injunction was impermissibly vague by not defining "interference" with the Plan, which is a separate issue from the Gatekeeper Injunction and is not the subject of this Appeal.  ROA.1038; *Highland I*, 48 F.4th at 438-39.

As its final point, *Highland I* considered the Appellants' argument that the Bankruptcy Court had no jurisdiction to enter the Gatekeeper Injunction because it had no jurisdiction over the underlying claims.  ROA.1038; *Highland I*, 48 F.4th at 439.  *Highland I* simply concluded that, "[w]hile that may be the case, our precedent

requires we leave that determination to the bankruptcy court in the first instance."

*Id*. The Appellants will address this conclusion below when addressing the Bankruptcy Court's jurisdiction, noting for now that this conclusion is, respectfully, illogical and impossible in application: if the Bankruptcy Court enters a permanent injunction that requires it to find that a claim is "colorable" before a party may file a lawsuit, and it subsequently holds that it lacks jurisdiction over the claim, then how can it find the claim "colorable" in order to grant relief from the Gatekeeper Injunction?  The result is a judicial Catch-22 that cannot have been intended by the Bankruptcy Court or this Court.

More pertinent to the jurisdictional discussion in *Highland I*, however, are the Court's citations in support of its conclusion above.  Prior to citing several opinions, the *Highland I* correctly held that

> Courts have long recognized bankruptcy courts can perform a gatekeeping function.  Under the "*Barton* doctrine," the bankruptcy court may require a party to obtain leave of the bankruptcy court before initiating an action in district court when the action is <u>against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity</u>.

ROA.1039; *Highland I*, 48 F.4th at 439 (internal quotation omitted) (emphasis added).  The Court then proceeded to cite and quote:

(i)     *Villegas v. Schmidt*, 788 F.3d 156, 159 (5th Cir. 2015), which was an action against a bankruptcy trustee;

(ii)    *Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000), which was an action against a bankruptcy trustee and his agent;

(iii) *Barton v. Barbour*, 104 U.S. 126 (1881), which was an action against a receiver; and

(iv) *Carroll v. Abide*, 788 F.3d 502, 506–07 (5th Cir. 2015), which was an action against a bankruptcy trustee.

*Id*.

Thus, in each instance that *Highland I* considered the jurisdictional argument, it was expressly referencing a bankruptcy trustee (or its equivalent). Again, as with the other arguments that *Highland I* considered, because the Court had already limited exculpation to a trustee and its equivalent, there was no need for *Highland I* to consider the permissible scope of the Gatekeeper Injunction as anything broader.

Finally, the result that *Highland I* necessarily vacated the Gatekeeper Injunction to the extent that its scope exceeded the Plan Exculpation is confirmed by the express conclusion in *Highland I*:

> In sum, the Plan violates § 524(e) but only insofar as it exculpates and <u>enjoins</u> certain non-debtors. The exculpatory order is therefore vacated as to all parties except Highland Capital, the Committee and its members, and the Independent Directors for conduct within the scope of their duties. We <u>otherwise affirm the inclusion of the injunction</u> and the gatekeeper provisions in the Plan.

ROA.1040; *Highland I*, 48 F.4th at 439 (emphasis added).

This language—especially as it summarizes the Court's opinion—must be given meaning. The Court plainly holds that "the Plan violates [the Bankruptcy Code] but only insofar as it . . . enjoins certain non-debtors." The provision that

"enjoins certain non-debtors" is precisely the Gatekeeper Injunction. And, the fact that the Court discussed "exculpates" and "enjoins" in the same sentence and with the same effect proves the Appellants' primary point: *Highland I* treated the Plan Exculpation and Gatekeeper Injunction coextensively, liming the injunction to the same scope (with respect to persons and actions) as the exculpation.

Finally, the conclusion that the Court "otherwise affirm[s] the inclusion of the injunction" must mean that there is some portion of the injunction that the Court vacates. Use of the word "otherwise" would otherwise have no meaning. Given that the preceding sentence authorizes protection for "Highland Capital, the Committee and its members, and the Independent Directors for conduct within the scope of their duties," the result is logical, consistent, and fully harmonious: the Bankruptcy Court may protect, by exculpation and injunction, the debtor, the committee and its members, and independent directors for conduct within their duties—and nothing more.

The question may be asked: if the Bankruptcy Court may exculpate one of these persons, then what is the need for a gatekeeper injunction as well? In other words, does not the Gatekeeper Injunction necessarily apply to something more than the Plan Exculpation? The answer is "no" for a simple reason: exculpation is not self-effectuating. One may be exculpated but that may not prevent a lawsuit from being filed and fees and burdens incurred, before the issue of exculpation is raised,

probably by way of affirmative defense.  It is the injunction that adds teeth to the exculpation and ensures that an exculpated person need not go through the expense and burden of being sued and proving his exculpation in the first place.  The exculpation and injunction act in tandem, and are flip sides of the same coin.

The foregoing conclusion is confirmed by the footnote at the conclusion of *Highland I*:

> Nothing in this opinion should be construed to hinder the bankruptcy court's power to enjoin and impose sanctions on Dondero and other entities by following the procedures to designate them vexatious litigants.  But non-debtor exculpation within a reorganization plan is not a lawful means to impose vexatious litigant injunctions and sanctions.

ROA.1040; *Highland I*, 48 F.4th at 439, n. 19 (internal citation omitted).

Respectfully, the Court would have had no need to clarify that the Bankruptcy Court's power to enjoin vexatious litigation is not "hindered" by the Court's opinion, unless the Court's opinion was in fact hindering the Bankruptcy Court's power to enter a different kind of injunction.  The kind of injunction so hindered, or limited, was the Gatekeeper Injunction, which was entered to protect a non-existing estate, a non-existing reorganization, and persons who could not be exculpated.  A vexatious litigant injunction, on the other hand, protects the integrity of the system and of the courts itself.  *See, e.g., Nat'l Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996) ("Such powers may be exercised only if essential to preserve the authority of the court").

In conclusion, the fact that the Court in *Highland I*:

(i)     granted rehearing;

(ii)    struck its original language regarding the Gatekeeper Injunction being perfectly lawful;

(iii)   found no need to consider the Appellants' argument regarding the scope of the Gatekeeper Injunction, because that argument "is resolved by our striking the impermissibly exculpated parties";

(iv)    addressed the remaining arguments against the Gatekeeper Injunction only with reference to protecting a debtor or trustee; and

(v)     concluded that "the Plan violates § 524(e) but only insofar as it exculpates and <u>enjoins</u> certain non-debtors,"

all compel the logical, coherent, internally consistent conclusion that *Highland I* limited the Gatekeeper Injunction to the same persons and scope as the Plan Exculpation: "Highland Capital, the Committee and its members, and the Independent Directors for conduct within the scope of their duties."

## C.   THE APPELLANTS' CONSTRUCTION OF *HIGHLAND I* IS APPROPRIATE AND NECESSARY UNDER THIS COURT'S PRECEDENT AND THE BANKRUPTCY CODE

The Appellants' argument that *Highland I* necessarily and even expressly limited the scope of the Gatekeeper Injunction to be identical to that of the Plan Exculpation is the only conclusion that is consistent with this Court's prior precedent and one that would leave *Highland I* internally consistent: the Bankruptcy Court cannot do by injunction what it cannot do by exculpation. The crux of *Highland I* and the opinions on which it rests is that section 524(e) of the Bankruptcy Code

prescribes the scope of a discharge as applicable to the debtor only, and extending the effect of a discharge to non-debtors violates the Bankruptcy Code.  ROA.1032-35; *Highland I*, 48 F.4th at 435-438.  The same is true for the Gatekeeper Injunction.

### 1.    This Court's Precedent

This Court's most important precedent with respect to non-consensual third party releases is *Pacific Lumber*, which underpinned the analysis and holdings of *Highland I*.  *In the Matter of The Pacific Lumber Co.*, 584 F.3d 229 (5th Cir. 2009).  In that opinion, and after reviewing applicable precedent, the Court held that:

> In a variety of contexts, this court has held that Section 524(e) only releases the debtor, not co-liable third parties.  These cases seem broadly to foreclose non-consensual non-debtor releases <u>and permanent injunctions</u>.

*Id*. at 252 (internal citations omitted) (emphasis added).

Thus, *Pacific Lumber* equated an exculpation (non-debtor release) with an injunction that effectuates the same thing.  This has long been the law in this Circuit.  In *In the Matter of Zale Corp*., 62 F.3d 746 (5th Cir. 1995), this Court disapproved of a permanent bankruptcy injunction prohibiting suit against insurance carriers (while holding open the potential of a temporary injunction): "[s]ection 524 prohibits the discharge of debts of nondebtors.  Accordingly, we must overturn a § 105 injunction if it effectively discharges a nondebtor."  *Id*. at 760.  The Gatekeeper

Injunction is of course rooted in section 105(a) of the Bankruptcy Code.[4]  ROA.809. In *In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1059-60 (5th Cir. 2012), this Court likewise equated a permanent plan injunction with an impermissible third-party release under section 524 of the Bankruptcy Code.

Simply put, the Bankruptcy Court cannot do through its Gatekeeper Injunction that which *Highland I* and this Court's other precedent prevent it from doing through the Plan Exculpation.  The bankruptcy court in *In re Patriot Place Ltd.*, 486 B.R. 773 (Bankr. W.D. Tex. 2013) recognized this fact.  In that case, the plan proposed an exculpation and an injunction protecting the exculpated parties.  *See id*. at 820-21.  While the court noted that certain injunctions may be proper in order to effectuate a narrowly tailored release, the injunction cannot be broader than the

---

[4] The Bankruptcy Court cited additional Bankruptcy Code references supporting the Gatekeeper Injunction, none of which are applicable.  ROA.809.  Section 1123(a)(5) requires that a Chapter 11 plan provide adequate means for its implementation and cannot be construed as conferring any power or jurisdiction on the Bankruptcy Court itself.  11 U.S.C. § 1123(a)(5). Section 1123(b)(6) provides that a plan may contain any other appropriate provision "not inconsistent with the applicable provisions of this title."  11 U.S.C. § 1123(b)(6).  That too is not a grant of authority or jurisdiction, and the Gatekeeper Injunction, like the exculpation provision, is inconsistent with section 524(e) of the Bankruptcy Code.  Section 1141 addresses the effects of confirmation and the scope of a Chapter 11 discharge, and also provides no grant of authority and makes no mention of protecting third parties, again limiting a discharge to the debtor.  11 U.S.C. § 1141.  Section 1142(b) empowers the Bankruptcy Court to order any person to execute and deliver instruments and to perform other acts necessary to consummate a plan.  11 U.S.C. § 1142(b).  The Gatekeeper Injunction does not direct the Appellants to deliver any instrument or to perform any act necessary to consummate a plan, if for no other reason than that the Plan here has been consummated long ago and seeking relief from the Gatekeeper Injunction (a form of act) is not in any way necessary to any consummation of anything.  Thus, the sole possible support for the authority to enter the Gatekeeper Injunction is section 105(a) of the Bankruptcy Code, which *Pacific Lumber* and *Zale* clearly hold cannot be used to protect third parties outside the scope of section 524 of the Bankruptcy Code.

release. *See id*. Because the injunctions applied to improperly exculpated persons and claims, the injunction, as the exculpation, was rejected. *See id*. at 821-22.

Nor does it matter that the injunction here is styled as a "gatekeeper" injunction and that a party may obtain relief from the injunction by demonstrating that it holds a "colorable" claim: the question is the power, jurisdiction, and authority to order the injunction in the first place—in fact, that of an Article I court to permanently enjoin a non-debtor from suing a non-debtor over a non-bankruptcy claim in a non-bankruptcy state or federal court whether or not the claim is "colorable."

And, what the Bankruptcy Court seems to have overlooked is the second conjunctive requirement for it granting relief from the Gatekeeper Injunction specified by the Plan: "specifically authorizing such Enjoined Party to bring such claim or cause of action." ROA.899. There is no mention of what factors might guide this authorization, and it is more than conceivable that the Bankruptcy Court might not grant this authorization even if a party demonstrates that a claim is "colorable," or that the Bankruptcy Court might condition its authorization on such things as fronting the opponent's attorney's fees (as in *In re Serta Simmons Bedding LLC* discussed below). Blanket and unguided authorization such as this is, frankly, unprecedented.

2. __Section 524(g) of the Bankruptcy Code__

*Highland I* and this Court's other precedent rely heavily on section 524(e) of the Bankruptcy Code, which limits the discharge to a debtor, in strictly limiting the scope of a bankruptcy court's exculpation order.  By the same token and logic, section 524(g) of the Bankruptcy Code, which addresses the authority of a bankruptcy court to enter a plan injunction prohibiting the bringing of third party claims, limits the permissible scope of the Gatekeeper Injunction here.

Section 524(g), enacted by Congress in the wake of multiple, large asbestos bankruptcy cases, grants a bankruptcy court the authority to enter an injunction under a Chapter 11 plan: "a court that enters an order confirming a plan of reorganization under chapter 11 may issue, in connection with such order, an injunction in accordance with this subsection to supplement the injunctive effect of a discharge under this section."  11 U.S.C. § 524(g)(1)(A).  Such an injunction may be entered to prevent a non-debtor from suing a non-debtor.  *See id*. at § 524(g)(1)(B); 524(g)(4)(A)(ii) ("such an injunction may bar any action directed against a third party who is identifiable from the terms of such injunction").  And, relief from such an injunction may be sought only from the court issuing the injunction.  *See id*. at § 524(g)(2)(A).  However, section 524(g) injunctions are expressly limited to an asbestos case where a highly detailed trust is created under the plan to benefit asbestos victims.  *See id*. at § 524(g)(2)(B).

Thus, just as *Highland I* vacated the Plan Exculpation because it violated section 524(e) of the Bankruptcy Code, so too should section 524(g) of the Bankruptcy Code lead to the same conclusion with respect to the Gatekeeper Injunction. The principles, legal analysis, jurisdiction, and authority are all the same, and necessitate the same result. That is not to say that the Gatekeeper Injunction is wholly void as applied to the persons protected by the Plan Exculpation, consistent with *Pacific Lumber*, but it reinforces the conclusion that the Gatekeeper Injunction cannot be broader in scope with respect to the persons it protects and the claims it enjoins than the permissible scope of exculpation.

### 3.    Bankruptcy Court Lacks Jurisdiction Over Gatekeeper Injunction

The Bankruptcy Court is a court of limited jurisdiction, deriving its jurisdiction entirely from that conferred on the District Courts. *See* 28 U.S.C. §§ 157 and 1334. Its broadest jurisdiction (non-core at that and encompassing actions that would exist outside of bankruptcy) is for "all civil proceedings related to cases under title 11." *Id*. at § 1334(b). Its "related-to" jurisdiction is not exclusive jurisdiction, unlike its jurisdiction over the bankruptcy case itself. *See id*. It is black-letter law that, "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *In re Craig's*

*Stores of Tex., Inc.*, 266 F.3d 388, 390 (5th Cir. 2001). In other words, there is no "related-to" jurisdiction after confirmation.

Yet here, the Bankruptcy Court has granted to itself the *exclusive* jurisdiction to determine whether a claim between a non-debtor and a non-debtor over which it would otherwise have no jurisdiction is "colorable." More troubling, the Bankruptcy Court has granted itself that jurisdiction not only for claims that may have arisen prior to confirmation, but to claims that may arise after confirmation which cannot possibly then affect a bankruptcy estate or a bankruptcy case in administration. That grant is not only for persons not otherwise subject to its jurisdiction, but also for non-bankruptcy claims that it would otherwise have no jurisdiction over under any scenario. And, if the Bankruptcy Court determines that a claim is not "colorable," then a court with no jurisdiction over the underlying dispute will have made a substantive ruling that permanently blocks the Appellants' access to any court.[5]

The Appellants and their counsel urge the Court to not permit this slippery slope and expansive taking of federal jurisdiction in the guise of "aiding" a "reorganization." Indeed, the slippery slope has already begun.

On June 6, 2023, the Bankruptcy Court for the Southern District of Texas entered its order confirming a Chapter 11 plan in *In re Serta Simmons Bedding LLC*,

---

[5] Conversely, if the Bankruptcy Court determines that a claim is "colorable," then a court with no underlying jurisdiction will have made a substantive ruling entitled to collateral estoppel. Either way, a court without jurisdiction is making a substantive decision.

2023 WL 3855820 (Case No. 23-90020) (Bankr. S.D. Tex. June 6, 2023).  This order

was entered after *Highland I* and the court expressly references *Highland I.  See id*.

at *9.  While not styled as a gatekeeper injunction, the order contains the following

injunction:

> No party may assert a claim on any basis against either Mr. Tepner or
> Ms. Hilson arising out of or related to their roles in these cases without
> first seeking authority from this Court. Any such request shall be made
> in writing with notice to all affected parties and shall include a proposed
> complaint setting forth any alleged claims and the detailed factual basis
> in support of such claims. Further, <u>any such request shall include a
> proposed attorney fee reserve</u>, subject to court modification, that will
> be deposited to the Court's registry to indemnify Mr. Tepner and Ms.
> Hilson against costs associated with the successful defense of any claim
> that is allowed to proceed.

*Id*. at *10 (emphasis added).

Apparently, the exculpation and gatekeeper provisions in *Serta Simmons

Bedding* are insufficient, for now any party wishing to pursue its legal rights must

also front its opponent's attorney's fees before the bankruptcy court will even

*consider* finding that the claim is colorable.  In other words, without any finding of

vexatiousness, bad faith, or anything else, a person must pay before the doors to legal

redress can even be proposed to be opened.  But that is the inevitable result when

professionals administering bankruptcy estates, not satisfied merely with the large

fees they make and the protections they already have, seek to be immunized as well.

*Highland I* did not disagree with the Appellants' jurisdictional argument,

noting in response to that argument that "that [the Bankruptcy Court's lack of

jurisdiction] may be the case," but then stating that "our precedent requires we leave that determination to the bankruptcy court in the first instance," again within the context of the *Barton* doctrine, which applies to trustees and court-appointed fiduciaries. ROA. 1039. This is a fully logical statement if, as the Appellants urge, the Court already limited the Gatekeeper Injunction to the scope of the Plan Exculpation. It is illogical and unworkable, however, as applied to anything else: if the Bankruptcy Court has no jurisdiction to grant relief from the injunction, then a patently extra-jurisdictional injunction is allowed to stand. It is not the orderly administration of justice to conclude that one should risk violating a federal court injunction based on his belief that the injunction is void for lack of subject matter jurisdiction under the Constitution and otherwise. That is instead the point of this Appeal.

## D.   GATEKEEPER INJUNCTION IS NOT A PROPER ANTI-FILING INJUNCTION

Consistent with what it always does, Highland undoubtedly will point out the many legal proceedings and appeals that have resulted from its bankruptcy case, blaming everyone but itself for the volume of judicial work that has resulted. Highland will point the finger at the Appellants, smearing them with vague accusations of vexatiousness, based on Dondero's supposed control of his many tentacles to engage in a war of attrition with Highland. Highland will ignore, as it always does, that it filed at least *four* adversary proceedings against the Appellants,

that the Appellants manage billions of dollars of innocent investor funds, and that, with minor exceptions, the Appellants have acted defensively to protect their rights and those of their investors. That is why the Appellants have been dragged by *Highland* into *its* bankruptcy case, and that is why the Appellants have been forced to litigate. But the Appellants will not burden the Court further with these allegations.

Rather, the Appellants will focus on the facts. It is true that *Highland I* expressly noted that it in no way limited the power of the Bankruptcy Court to enter a pre-filing or anti-filing injunction to prevent abuse and vexatious litigation. That cannot, however, justify the Gatekeeper Injunction here, for there has been no finding that the Appellants are vexatious, have engaged in bad faith, or that the Bankruptcy Court needs the extraordinary remedy of any such injunction to vindicate its authority and protect the system against abuse.

Among other things, and despite the Bankruptcy Court's ninety (90) pages of detailed findings of fact and conclusions of law:

(i) there is no finding that the Appellants (or Dondero) are vexatious litigants;

(ii) there is no finding of *alter ego* between Dondero and the Appellants;

(iii) there is no finding of any bad faith or groundless litigation or any Rule 11 violation by the Appellants;

(iv)    there is no finding of any contempt against the Appellants in any proceeding, nor has any award of a sanction or monetary relief issued against them;[6] and

(v)    there is no discussion of any lesser available sanction or remedy, or recognition of the simple fact that, should the Appellants file something in the future that violates Rule 11, they can and should be sanctioned at that time.

*See, generally,* ROA.803-09 (discussing bases for Gatekeeper Injunction).

Indeed, that the Gatekeeper Injunction is not rooted in any such findings of bad faith, vexatious, or frivolous litigation, the Court need only consider the definition of "Enjoined Parties," who are subject to the Gatekeeper Injunction. ROA.856.  That definition includes "all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor," and "any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which such Entity appeared and any other party in interest." ROA.856.  The United States of America, for example, filed pleadings in the Bankruptcy Case.  It is an "Enjoined Party."  Along with everyone who has any interest with respect to Highland or its bankruptcy case irrespective of whether any of its actions or filings was made in bad faith, or was frivolous, or was vexatious.

---

[6] In separate proceedings, the Bankruptcy Court has issued orders of contempt and monetary sanctions against Dondero, which is on appeal to this Court, but not against the Appellants.

Nevertheless, the Bankruptcy Court appears to have justified the Gatekeeper Injunction, in part, by analogizing it to a pre-filing injunction: "[t]he Gatekeeper Provision is also consistent with the notion of a prefiling injunction to deter vexatious litigants, that has been approved by the Fifth Circuit." ROA.809. But to be "consistent with" is not the same as "grounded in." Any notion that the Gatekeeper Injunction can be supported by the record here is foreclosed by this Court's clear precedent:

> Federal courts have inherent powers which include the authority to sanction a party or attorney when necessary to achieve the orderly and expeditious disposition of their dockets. Such powers may be exercised only if essential to preserve the authority of the court and the sanction chosen must employ the least possible power adequate to the end proposed. A court must make a specific finding of bad faith in order to impose sanctions under its inherent power. Moreover, when sanctions are imposed under the inherent power, this court's investigation of legal and evidentiary sufficiency is particularly probing and this court must probe the record in detail to get at the underlying facts and ensure the legal sufficiency of their support for the district court's more generalized finding of bad faith.

*In the Matter of Carroll*, 850 F.3d 811, 815 (5th Cir. 2017) (internal quotations omitted) (internal citations omitted). And, the sanction that is imposed must be the least severe sanction to deter abuse and protect the system and the litigants.

In particular, when considering an anti-filing injunction, this Court requires the consideration of, and evidence regarding, the following factors:

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to

harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*In the Matter of Carroll*, 850 F.3d at 815.

Here, not only is the record devoid of any finding that the Appellants have acted vexatiously or in bad faith, but there is no discussion of these factors. There are little more than the following generalized findings, at least as hypothetically applicable to the Appellants:

> The Bankruptcy Court concludes that without appropriate protections in place, in the form of the Gatekeeper Provision, Mr. Dondero and his related entities will likely commence litigation against the Protected Parties after the Effective Date and do so in jurisdictions other than the Bankruptcy Court in an effort to obtain a forum which Mr. Dondero perceives will be more hospitable to his claims. The Bankruptcy Court also finds, based upon Mr. Seery's testimony, that the threat of continued litigation by Mr, Dondero and his related entities after the Effective Date will impede efforts by the Claimant Trust to monetize assets for the benefit of creditors and result in lower distributions to creditors because of costs and distraction such litigation or the threats of such litigation would cause. The Bankruptcy Court further finds that unless the Bankruptcy Court approves the Gatekeeper Provision, the Claimant Trustee and the Claimant Trust Oversight Board will not be able to obtain D&O insurance, the absence of which will present unacceptable risks to parties currently willing to serve in such roles. . .

> Based on the foregoing, the Bankruptcy Court finds that the Gatekeeper Provision is necessary and appropriate in light of the history of the continued litigiousness of Mr. Dondero and his related entities in this Chapter 11 Case and necessary to the effective and efficient administration, implementation and consummation of the Plan and is appropriate pursuant to *Carroll v. Abide (In re Carroll)* 850 F.3d 811 (5th Cir. 2017). Approval of the Gatekeeper Provision will prevent baseless litigation designed merely to harass the post-confirmation entities charged with monetizing the Debtor's assets for the benefit of

its economic constituents, will avoid abuse of the court system and preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants.

ROA.808-09.

None of these or any other findings rise to the level of detail and severity required for the extraordinary remedy of an anti-filing injunction, none of this relates to the Appellants themselves, and most of this relates to maximizing creditor recoveries and obtaining insurance, as opposed to deterring vexatious and groundless litigation. At best, the Bankruptcy Court includes the Appellants within its expansive definition of "Dondero Related Entities," ROA.768, as it does with each Dondero-affiliated entity that objected to the confirmation of the Plan without regard to the merits of its objection or its motivations. And the Bankruptcy Court apparently included the Appellants within this definition *only* because they objected to the Plan.[7] Even then, the Bankruptcy Court fails to find or mention anything that the Appellants filed or argued that was improper or sanctionable, either individually or collectively, and surely objecting to the Plan cannot itself have been improper since the Appellants substantially prevailed in the First Appeal.

A pre-filing injunction is an "extraordinary remedy," which requires "extraordinary circumstances, such as a demonstrated history of frivolous and

---

[7] The reference includes publicly traded CLOs and REITs, and even a bank (NexBank, with assets of $14 billion), all under separate, independent management, albeit affiliated in one way or another and to varying degrees with Dondero.

vexatious litigation." *Milltex Indus. Corp. v. Jacquard Lace Co. Ltd.*, 55 F.3d 34, 39 (2d Cir. 1995). *Accord Mantei v. Kansas*, 2018 WL 1895542 at *1 (W.D. Tex. 2018). "[T]he injunction against future filings must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 360 (5th Cir. 1986). Such an injunction is appropriate "where monetary sanctions are ineffective in deterring vexatious filings." *Id*. No extraordinary circumstances are present or have been found, nor is there any demonstrated history of frivolous and vexatious litigation by the Appellants.

The Appellants advise funds and customers, whose investments Highland manages to the tune of hundreds of millions, if not billions, of dollars. Should Highland and its agents commit actionable wrongs as they manage these funds, the Appellants owe duties to their clients to advise them to seek legal redress or to seek legal redress on their behalf, which is the whole point of their objections to the Plan's exculpation and injunctions provisions. The Appellants seek nothing more than to ensure that their right and ability to seek lawful relief from appropriate courts with subject matter jurisdiction is not limited by Highland's desire to avoid litigation and to maximize returns to creditors.

In the end, if the scant record the Bankruptcy Court relied on is sufficient to support the Gatekeeper Injunction *vis-à-vis* the Appellants, then every post-

confirmation Chapter 11 debtor in theory should be entitled to the same permanent protections, because these considerations (aiding a reorganization, minimizing litigation) are present in every single complex Chapter 11 case.

## VI.    CONCLUSION

The Gatekeeper Injunction should be limited to the same scope as the Plan Exculpation, as defined by *Highland I*: as the Bankruptcy Court has no jurisdiction, power, or authority to exculpate anyone other than the narrow class of fiduciaries identified in *Highland I*, it has no jurisdiction, power, or authority to do by injunction what it cannot do by exculpation.  A contrary conclusion renders *Highland I* and *Pacific Lumber* illusory, since debtors will simply obtain by injunction what they cannot by exculpation.  And, it would mean that an Article I court, with no underlying jurisdiction, will make the *exclusive* decision of whether a claim is "colorable."  Bedrock Supreme Court cases, including *Northern Pipeline* and *Stern v. Marshall*,[8] which have defined the limits of Article I jurisdiction and the Constitutional role of the federal courts, do not contemplate or permit such an expansive taking of jurisdiction by the Bankruptcy Court.

---

[8] *See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) (invalidating jurisdictional grant to bankruptcy courts under the Bankruptcy Code of 1978).  *See also Stern v. Marshall*, 546 U.S. 462 (2011) (holding that bankruptcy court lacked Constitutional authority to enter final judgment on state law claims outside of the claims adjudication process).

The Appellants respectfully request that the Court reverse the Order Upon Remand and render judgment that the Bankruptcy Court is to conform the Plan and Confirmation Order to *Highland I* by: (i) changing the definition of "Protected Parties" to be precisely the same as for the Plan Exculpation; *i.e.* "Highland Capital, the Committee and its members, and the Independent Directors for conduct within the scope of their duties"; and (ii) changing the temporal nature of the Gatekeeper Injunction such that it cannot apply to claims and causes of action that arise post-confirmation when the bankruptcy estate no longer exists (*i.e.* the "<u>Effective Date</u>") of the Plan.

RESPECTFULLY SUBMITTED this 15th day of August, 2023.

**MUNSCH HARDT KOPF & HARR, P.C.**

By:  /s/ Davor Rukavina

Davor Rukavina, Esq.
Texas Bar No. 24030781
500 N. Akard St., Ste. 3800
Dallas, Texas  75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: drukavina@munsch.com

**ATTORNEYS FOR NEXPOINT ASSET MANAGEMENT, L.P. and NEXPOINT ADVISORS, L.P.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this the 15th day of August, 2023, a true and a correct copy of the foregoing document was served on the counsel of record listed below via electronic service.

Zachery Z. Annable, Esq.
Email: zannable@haywardfirm.com
Hayward, P.L.L.C.
10501 N. Central Expressway, Ste. 106
Dallas, TX 75231-0000

Jeffrey N. Pomerantz
Email: jpomerantz@pszjlaw.com
Pachulski Stang Ziehl & Jones, L.L.P.
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067

By: /s/ Davor Rukavina
      Davor Rukavina, Esq.

## CERTIFICATE OF COMPLIANCE WITH RULE
## 32(a)'s TYPE-VOLUME LIMITATION, TYPEFACE
## LIMITATION, AND TYPE-STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,259 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman, 14 pt. font.

Dated:  August 15, 2023.

By:  /s/ Davor Rukavina
Davor Rukavina, Esq.