Case No. 23-10534

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

IN THE MATTER OF HIGHLAND CAPITAL MANAGEMENT, L.P.

DEBTOR

HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., NOW
KNOWN AS NEXPOINT ASSET MANAGEMENT, L.P.;
NEXPOINT ADVISORS, L.P.,

APPELLANTS

v.

HIGHLAND CAPITAL MANAGEMENT, L.P.,

APPELLEE

Direct Appeal from the
United States Bankruptcy Court
Northern District of Texas
Case No. 19-34054-sgj11

## APPELLEE'S BRIEF

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz
John A. Morris
Gregory V. Demo
Jordan A. Kroop
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
(310) 277-6910

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
(972) 755-7100

*Counsel for Appellee*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that:

(a)     There are no other debtors associated with this bankruptcy case other than Highland Capital Management L.P., and there are no publicly-held corporations that own 10% or more of Highland Capital Management L.P., which is not a corporation or a parent corporation;

(b)     In accordance with the certificate contained in its opening brief, Appellant Highland Capital Management Fund Advisors, L.P. (which is allegedly now known as NexPoint Asset Management, L.P.) is a private, non-governmental party, whose owners, Highland Capital Management Services, Inc., Strand Advisors XVI, Inc., and Okada Family Revocable Trust, are also private, non-governmental parties; no publicly-held corporation owns 10% of more of the equity interests in any of these entities;

(c)     In accordance with the certificate contained in its opening brief, Appellant NexPoint Advisors, L.P. is a private, non-governmental party, whose general partner, NexPoint Advisors GP, LLC, is also a private, non-governmental party wholly owned by James Dondero; no publicly-held corporation owns 10% of more of the equity interests in either NexPoint entity;

(d)     The following listed persons and entities, as described in the fourth sentence of 5th Cir. R. 28.2.1, have an interest in the outcome of this case:

      (i)     Highland Capital Management, L.P.
            Appellee
            Counsel:    Pachulski Stang Ziehl & Jones LLP
                        Hayward PLLC

      (ii)    The Highland Claimant Trust, a Delaware trust, the beneficiaries of which comprise the creditors of Highland Capital Management, L.P.
            Indirectly interested party
            Counsel:    Pachulski Stang Ziehl & Jones LLP
                        Hayward PLLC

(iii)　NexPoint Advisors, L.P.
　　　　Appellant
　　　　Counsel:　　Munsch Hardt Kopf & Harr, P.C.

(iv)　Highland Capital Management Fund Advisors, L.P.
　　　　Appellant
　　　　Counsel:　　Munsch Hardt Kopf & Harr, P.C.


*/s/ Zachery Z. Annable*
Zachery Z. Annable

DOCS_NY:48599.8 36027/003

## STATEMENT REGARDING ORAL ARGUMENT

Because the scope of the Gatekeeper Provision at issue in this appeal is critically important to Appellee's plan of reorganization—it safeguards fiduciaries charged with carrying out the Plan from harassing, value-destructive litigation—Appellee believes the Court may benefit from oral argument.

# TABLE OF CONTENTS

Page

I.    STATEMENT OF ISSUE AND STANDARD OF REVIEW ........................1

II.   STATEMENT OF THE CASE.................................................................1

III.  SUMMARY OF ARGUMENT .................................................................5

IV.   ARGUMENT ...........................................................................................8

    A.    This Court's Clear Statements ............................................................8

    B.    The Replacement of One Sentence in the Court's Initial Opinion
          in *Highland I* Does Not Support Appellants' Restrictive View of
          the Gatekeeper Provision's Scope........................................................10

    C.    Neither the Gatekeeper Provision nor the Injunction Releases
          Claims or Is Affected by the Court's Holding that the Exculpation
          Improperly Releases Non-Debtor Parties in Violation of
          Bankruptcy Code § 524(e) as Interpreted by *Pacific Lumber*...............13

    D.    The Bankruptcy Court Properly Interpreted *Highland I* to Require
          Only the Definition of Exculpated Parties to Be Narrowed..................19

    E.    Appellants' Argument that the Bankruptcy Court Lacks
          Jurisdiction to Act as a Gatekeeper Was Decided in *Highland I* ..........22

    F.    Limiting the Gatekeeper Provision to Exculpated Parties Would
          Eviscerate the Gatekeeper Provision and Render It Meaningless........24

    G.    The Court Should Not Consider the New Arguments Appellants
          Raise for the First Time on Appeal Seeking to Invalidate the
          Gatekeeper Provision...........................................................................26

V.    CONCLUSION ........................................................................................29

# TABLE OF AUTHORITIES

## CASES

*Barton v. Barbour,*
  104 U.S. 126 (1881) ......................................................................... 6, 23

*Carter v. Rodgers,*
  220 F.3d 1249 (11th Cir. 2000) .................................................24

*CBS v. Primetime 24 J.V.,*
  245 F.3d 1217 (11th Cir. 2001) .................................................9

*Hallock v. Key Fed. Sav. Bank (In re Silver Oak Homes),*
  167 B.R. 389 (Bankr. D. Md. 1994)..........................................24

*Helmer v. Pogue,*
  2012 U.S. Dist. LEXIS 151262 (N.D. Ala. Oct. 22, 2012) ......................................24

*In re Ditech Holding Corp.,*
  2021 Bankr. LEXIS 2274 (Bankr. S.D.N.Y. August 20, 2021)................................24

*In re Motors Liquidation Co.,*
  568 B.R. 217 (Bankr. S.D.N.Y. 2017) ..................................................23

*In re Motors Liquidation Co.,*
  541 B.R. 104 (Bankr. S.D.N.Y. 2015) ..................................................23

*In the Matter of The Pacific Lumber Co.,*
  584 F.3d 229 (5th Cir. 2009) ......................................................... passim

*Lawrence v. Goldberg,*
  573 F.3d 1265 (11th Cir. 2009) ..................................................24

*Lowenbraun v. Canary (In re Lowenbraun),*
  453 F.3d 314 (6th Cir. 2006) ......................................................24

*NexPoint Advisors, L.P. v. Highland Capital Mgmt., L.P.*
  *(In re Highland Capital Mgmt., L.P.),*
  48 F.4th 419 (5th Cir. 2022) ......................................................... passim

*Procter & Gamble Co. v. Amway Corp.,*
  376 F.3d 496 (5th Cir. 2004) ..................................................26

*Roy v. City of Monroe,*
  950 F.3d 245 (5th Cir. 2020) ..................................................26

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
  546 B.R. 284 (Bankr. S.D.N.Y. 2016) ..................................................23

*Tufts v. Hay,*
    977 F.3d 1204 (11th Cir. 2020) ................................................................24

*Villegas v. Schmidt,*
    788 F.3d 156 (5th Cir. 2015) ..................................................... 6, 22, 23

## STATUTES

11 U.S.C. § 105 ...............................................................................................23

11 U.S.C. § 1123 .............................................................................................23

11 U.S.C. § 524(e) ............................................................................... passim

11 U.S.C. § 553 ...............................................................................................15

## I.    STATEMENT OF ISSUE AND STANDARD OF REVIEW[1]

Appellee Highland Capital Management, L.P., the reorganized debtor in the chapter 11 bankruptcy case below, agrees with Appellants that the sole issue on appeal is whether the Bankruptcy Court erred by interpreting *Highland I* as requiring a change only to the Exculpation and not to the Gatekeeper Provision (defined below) or any other Plan provision.

Appellee agrees with Appellants that this Court's review is *de novo*.

## II.    STATEMENT OF THE CASE

This is a simple case. Relying on *Pacific Lumber,* this Court held in *Highland I* that the Debtor's Plan of Reorganization (the "**Plan**") improperly exculpated certain non-debtor parties in violation of Bankruptcy Code § 524(e). Otherwise, this Court affirmed the Bankruptcy Court's order confirming the Plan in all respects, including the propriety of the Injunction and Gatekeeper Provision. Among many other unambiguous statements, this Court said:

> We do, however, agree with Appellants that the bankruptcy court exceeded its statutory authority under § 524(e) by **exculpating** certain non-debtors, and so we reverse and vacate the Plan **only to that extent**."[2]

and

---

[1] For the Court's convenience, capitalized but undefined terms used in this brief have the meanings given to them in the *Appellant's Opening Brief* (the "**Opening Brief**") [Doc. 32]. Citations to "**ROA**" are to the Record on Appeal.

[2] *NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.),* 48 F.4th 419, 432 (5th Cir. 2022) ("***Highland I***") (emphasis added).

> **Though the injunction and gatekeeping provisions are sound**, the exculpation of certain non-debtors exceeds the bankruptcy court's authority. We reverse and vacate **that limited portion** of the Plan.[3]

Appellee moved the Bankruptcy Court to conform the Plan to that ruling by limiting the definition of "Exculpated Parties" to include only the Debtor, the Creditor Committee, its members, and the Independent Directors. Appellants objected, arguing that *Highland I* required more. They acknowledge that, in *Highland I,* the Court repeatedly stated that the Injunction and Gatekeeper Provision were appropriate. Yet Appellants contend that this Court, *sub silentio*, intended to eviscerate the scope of the Gatekeeper Provision by limiting it to the parties this Court determined could be legally exculpated. Appellants' argument that *Highland I* requires this result mischaracterizes the Court's opinion, rests on illogical inferences, fails to recognize the differing underlying rationales for different plan protections, and overstates the meaning of this Court's substitution of one sentence of its original opinion in response to Appellants' petition for rehearing.

The Bankruptcy Court agreed with Appellee that the only change to the Plan required by *Highland I* was to narrow the definition of Exculpated Parties. The Bankruptcy Court carefully parsed *Highland I*, noting the several places in the opinion where this Court emphasized that it was reversing the Plan only to the extent it exculpated certain non-debtor parties in violation of this Court's interpretation of Bankruptcy Code

---

[3] *Id.* at 435 (emphasis added).

§ 524(e). The Bankruptcy Court then thoroughly reviewed the Exculpation, the Injunction, and the Gatekeeper Provision, analyzing the nature, intent, scope, and underlying legal basis of each of the three separate provisions to determine which provisions implicated *Highland I*'s prohibition on releases that violated § 524(e).

The Bankruptcy Court determined that the Injunction was not a "release" called into question by *Highland I.* The Injunction does little more than repeat the statutory injunction prohibiting certain creditor action arising after the Plan's effective date that would undermine the discharge Appellee is entitled to under Bankruptcy Code § 1141, which is designed to protect property administered under the Plan and prevent interference with the Plan's implementation. The Bankruptcy Court accurately characterized the Injunction as "a policing mechanism to deter actions in violations [*sic*] of the discharge or otherwise inconsistent with the Plan."[4] The Injunction released nothing and no one, nor did it exculpate anyone and, therefore, it didn't implicate *Pacific Lumber* or Bankruptcy Code § 524(e).

The Bankruptcy Court determined that the Gatekeeper Provision was not a release, either. The Gatekeeper Provision doesn't release any liability or anyone, nor does it enjoin anything or anyone. Instead, the Gatekeeper Provision was and remains a critical stopgap against future frivolous and harassing lawsuits that could impede the Plan's success—as the Bankruptcy Court stated, the Gatekeeper Provision was "mostly a tool

---

[4] ROA.20, Order Upon Remand at 8 (emphasis removed).

to deal with any future, potential lawsuits that might be deemed to run afoul of Plan implementation."[5] The Gatekeeper Provision simply requires a plaintiff to first demonstrate to the Bankruptcy Court (as gatekeeper) that a claim is colorable before a claim may be brought against one of the Protected Parties. If successful, the plaintiff may bring the claim against the Protected Party in any appropriate court of competent jurisdiction. And if not successful, the plaintiff can appeal the Bankruptcy Court's determination that the claim is not colorable. Just like the Injunction, the Gatekeeper Provision didn't implicate § 524(e) or *Pacific Lumber* because the Gatekeeper Provision isn't a release.

Accordingly, the Bankruptcy Court determined that *Highland I* did not require any revisions to either the Injunction or the Gatekeeper Provision because neither provision released any non-debtors from any liability in violation of § 524(e)— the sole basis on which *Highland I* reversed confirmation of the Plan.

Appellants timely appealed to the District Court. Based on the importance of the Order Upon Remand to the Plan and, because regardless of how the District Court ruled the losing party would seek review in this Court, Appellants and Appellee jointly moved the Bankruptcy Court and this Court for certification and authorization to appeal the Order Upon Remand directly to this Court. This Court granted direct appeal.

---

[5] ROA.29, Order Upon Remand at 17.

Case: 23-10534    Document: 39    Page: 12    Date Filed: 10/05/2023

## III.  SUMMARY OF ARGUMENT

The Bankruptcy Court correctly determined that *Highland I* required only that the Plan be modified to narrow the definition of "Exculpated Parties"—the parties entitled to exculpation for negligence under the Plan. The Bankruptcy Court pointed to several specific statements in *Highland I* demonstrating that this Court's only concern with the Plan pertained to a release of claims that, this Court determined, violated Bankruptcy Code § 524(e). Among the language the Bankruptcy Court analyzed was this Court's statement that "the exculpation here partly runs afoul of [the § 524(e)] statutory bar on non-debtor discharge by reaching beyond Highland Capital, the Committee, and the Independent Directors. *See Pacific Lumber,* 584 F.3d 251–53. We must reverse and strike the few unlawful parts of the Plan's exculpation provision."[6]

The Bankruptcy Court determined that no change was required to the Gatekeeper Provision because it is not a release and because *Highland I* called the Gatekeeper Provision "sound." The Gatekeeper Provision releases no one from liability in any way. The Gatekeeper Provision only requires parties subject to it to first seek the Bankruptcy Court's determination that a claim is colorable before commencing a claim against "Protected Parties," which includes all fiduciaries appointed under the Plan and charged with monetizing Appellee's assets.

---

[6] *Highland I,* 48 F.4th at 435.

DOCS_NY:48599.8 36027/003

Appellants argue that the Gatekeeper Provision is tantamount to a release because a non-Article III judge can refuse to allow through the gate a claim that the judge would not have jurisdiction to adjudicate, thereby extinguishing the claim forever. That is not true. First, *Highland I* recognized that this Court's opinion in *Villegas*[7] authorized a bankruptcy court to act as a gatekeeper for claims it may not have jurisdiction to adjudicate. Second, and more importantly, if a party believes that the Bankruptcy Court has improperly refused to allow a claim to pass through the gate, that party has a remedy: it can appeal the decision to the District Court, where an Article III judge will review the determination that a claim should not be allowed to proceed because it is not even colorable.

Appellants repeatedly—and incorrectly—refer to the Gatekeeper Provision as an injunction throughout their Opening Brief. The Gatekeeper Provision does not enjoin any party from asserting claims. It requires only that a party seeking to assert claims first seek Bankruptcy Court approval before commencing litigation—a requirement this Court found appropriate given the substantial evidence before the Bankruptcy Court that the Gatekeeper Provision was necessary to prevent harassing, frivolous litigation from impeding success under the Plan. Appellants' hyperbolic claims—that the Gatekeeper Provision, if left to stand, prevents access to the courts and somehow equates to

---

[7] *Villegas v. Schmidt,* 788 F.3d 156 (5th Cir. 2015) (citing *Barton v. Barbour,* 104 U.S. 126 (1881)).

prospective judicial immunity—rests on their mischaracterization of the Gatekeeper Provision as an injunction and do not withstand scrutiny.

Accepting Appellants' invitation to limit the Gatekeeper Provision only to the Exculpated Parties would render it largely meaningless. The claims subject to the Gatekeeper Provision include claims relating to "the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing." As the Bankruptcy Court noted, all the Exculpated Parties ceased to exist on the Effective Date of the Plan and have no role in any of the post-Effective Date activities. Limiting the Gatekeeper Provision to Exculpated Parties would not reach any conduct undertaken after the Effective Date. Moreover, Appellee has already been discharged from any claims before the Plan's effective date and (under Plan provisions this Court upheld) the remaining Exculpated Parties could not be sued for negligence. Accordingly, Appellants' interpretation of *Highland I* would severely undermine the Gatekeeper Provision's efficacy. After refusing to disturb the Bankruptcy Court's findings that the conduct of the Appellants and other entities owned and controlled by James Dondero justified the Gatekeeper Provision, it is implausible that the Court in *Highland I* would have gutted the Gatekeeper Provision without clear, unambiguous language.

7

This Court should affirm the Bankruptcy Court's order that conformed the Plan to comport with the one basis on which this Court reversed the Confirmation Order in *Highland I.*

## IV.    ARGUMENT

### A.    This Court's Clear Statements

In *Highland I,* this Court clearly articulated the only issue it believed the Bankruptcy Court got wrong—holding that a provision of a plan that releases non-debtor third parties violates Bankruptcy Code § 524(e) as this Court analyzed that provision in *Pacific Lumber.* Describing the Appellants' remaining arguments as a "bankruptcy-law blunderbuss,"[8] the Court affirmed the Bankruptcy Court's order confirming the Plan in all other respects.[9]

Any analysis of what the Court meant in *Highland I* must begin by looking at what the Court actually said, not what the Court might have meant if one contorts the language and relies on a series of strained inferences.

Appellants acknowledge that the Court in *Highland I* explicitly rejected their position on appeal by its ultimate conclusion that "[w]e reverse only insofar as the plan

---

[8] *Highland I,* 48 F.4th at 432.

[9] Appellants overstate *Highland I* when they argue that a chapter 11 plan cannot provide protections to parties administering a reorganization against third party claims or limit claims against non-debtors. [Opening Brief at 13.] *Highland I* neither prohibited *all* protections available to parties administering a reorganization plan nor prohibited the ability of a bankruptcy court to limit claims—unless such protections or limitations *released* claims in violation of Bankruptcy Code § 524(e), which neither the Injunction nor Gatekeeper Provision does.

exculpates certain non-debtors in violation of 11 U.S.C. § 524 (e), strike those few parties from the plan's exculpation, and affirm on all remaining grounds."[10] But Appellants nevertheless argue that the Court did not mean what it said[11] and instead intended something very different—a significant restriction of the nature, scope, and protection afforded by the Gatekeeper Provision that would render it effectively meaningless.

Appellants ignore the following clear statements in *Highland I,* each of which unequivocally demonstrates that this Court's sole focus was to ensure that the Plan did not *release* claims in what it understood to be a violation of Bankruptcy Code § 524(e):

- "We then turn to the merits, conclude the Plan exculpates certain non-debtors beyond the bankruptcy court's authority and affirm in all other respects."[12]

- "We do, however, agree with Appellants that the bankruptcy court exceeded its statutory authority under § 524(e) by **exculpating** certain non-debtors, and so we reverse and vacate the Plan **only to that extent**."[13]

- "**Though the injunction and gatekeeping provisions are sound**, the exculpation of certain non-debtors exceeds the bankruptcy court's authority. We reverse and vacate **that limited portion** of the Plan."[14]

- "Appellants object to the bankruptcy court's injunction as vague and the gatekeeper provision as overbroad. We are unpersuaded."[15]

---

[10] *Highland I,* 48 F.4th at 424.

[11] Courts assume federal courts say what they mean and mean what they say. *See, e.g., CBS v. Primetime 24 J.V.,* 245 F.3d 1217, 1222 (11th Cir. 2001)

[12] *Highland I,* 48 F.4th at 429.

[13] *Id.* at 432 (emphasis added). At the risk of being facile, only means only.

[14] *Id.* at 435 (emphasis added).

[15] *Id.* at 437–38. Appellants argue that, when the Court used the term "unpersuaded" by Appellants' argument that the Gatekeeper Provision and Injunction were overbroad, the Court actually meant that Appellants' concerns were rendered "moot" because, by the Court's scaling back the Exculpation, the Court was implicitly limiting the Gatekeeper Provision to the properly exculpated parties. Appellants'

9

- "Courts have long recognized bankruptcy courts can perform a gatekeeping function."[16]

- "In sum, the Plan violates § 524(e), but **only** insofar as it exculpates and enjoins certain non-debtors.[17] The exculpatory order is therefore vacated as to all parties except Highland Capital, the Committee and its members, and the Independent Directors for conduct within the scope of their duties. **We otherwise affirm the inclusion of the injunction and the gatekeeper provisions in the Plan.**"[18]

**B.      The Replacement of One Sentence in the Court's Initial Opinion in *Highland I* Does Not Support Appellants' Restrictive View of the Gatekeeper Provision's Scope**

After this Court issued its initial opinion in *Highland I,* Appellants filed a Petition for Rehearing, urging the court to clarify that the Gatekeeper Provision only applied to the parties legally entitled to exculpation.

---

argument is illogical and nothing more than linguistic gymnastics. Nothing in *Highland I* supports Appellants' argument that the court implicitly intended that result. As discussed below, the Exculpation, the Gatekeeper Provision, and the Injunction each do different things, and it is more than an inferential leap to suggest that the Court somehow meant to limit the Gatekeeper Provision in such an abstruse way.

[16] *Id.* at 439. If this Court somehow found the concept of the Gatekeeper Provision infirm, this sentence would have been a *non sequitur*.

[17] Appellants point to the use of the word "enjoins" in this sentence to demonstrate that the Court must have been referring to the Gatekeeper Provision and that, therefore, the Court was treating the Exculpation and Gatekeeper Provision co-extensively. That conclusion is illogical, as the Gatekeeper Provision is not an injunction. Appellee believes the only logical interpretation is that the Court was emphasizing that the Injunction did not prohibit pursuit of claims against parties the Court found were not entitled to exculpation. That the Court was referring to the *Injunction* and not the *Gatekeeper Provision* is supported by the Court's statement that: "First, Appellants' primary contention—that the Plan's injunction is broad" by releasing non-debtors in violation of § 524(e)—is resolved by our striking the impermissibly exculpated parties*." Highland I,* 48 F.4th at 438.

[18] *Id.* (emphasis added). Again, only means only. Appellee can't fathom how "affirm the inclusion of the injunction and gatekeeper provisions" can mean anything but that the Court affirmed the inclusion of the Injunction and the Gatekeeper Provision. Neither could the Bankruptcy Court: "this court does not know how it could be clearer, that the Fifth Circuit was holding that the exculpations of certain parties violated section 524(e), but the other Plan Protections [including the Gatekeeper Provision] were 'sound.'" ROA.28, Order Upon Remand at 16.

In response to the Petition for Rehearing, the Court promptly reissued its opinion with only one change. The court substituted the sentence

"We now turn to the Plan's injunction and gatekeeper provisions."

for the sentence

"The injunction and gatekeeper provisions are, on the other hand, perfectly lawful."

Appellants incorrectly argue that this change demonstrates that the Court agreed with Appellants' view that the Gatekeeper Provision could legally protect only Exculpated Parties from non-colorable, frivolous litigation. Importantly, this Court did *not* accept Appellants' request in the Petition for Rehearing to make explicit the "clarification" Appellants sought. Rather, as the Bankruptcy Court noted, this Court did not disturb any of the Bankruptcy Court's factual or legal findings in this Court's initial opinion nor did this Court modify its holding that it reversed confirmation only to the extent the Plan exculpates certain non-debtors in violation of Bankruptcy Code § 524(e):

> It is certainly awkward for this Court to attempt to be a mind-reader regarding editorial or wordsmithing decisions undertaken by the Fifth Circuit. All this Court can be sure of is that the Fifth Circuit declined the Funds' request, in their Motion for Rehearing, to strike or modify the defined term "Protected Parties" (that pertains to the Gatekeeper Provision) so that it would be coterminous with the defined term "Exculpated Parties." The Fifth Circuit did not modify the Gatekeeper Provision or its applicable definition of "Protected Parties" in any way, let alone in the manner that the Funds requested. And the Fifth Circuit did not include anything in its Final Fifth Circuit Opinion to indicate that the Panel agreed with the Funds' analysis.[19]

---

[19] ROA.28, Order Upon Remand at 16.

There is no support for Appellants' argument that this Court, *sub silentio*, intended to significantly modify the scope of the Gatekeeper Provision.[20]

Appellants' fallback argument—that when the Court issued its initial opinion, it intended to restrict the Gatekeeper Provision to legally exculpated parties—should persuade no one. In the original appeal of the Bankruptcy Court's order confirming the Plan, Appellants made several arguments that the Gatekeeper Provision was unauthorized by the Bankruptcy Code. This Court rejected each of those arguments, repeatedly stating that it was reversing the Plan only because the Exculpation—and the Exculpation alone—violated Bankruptcy Code § 524(e). If Appellants were correct that this Court intended in its original opinion to restrict the Gatekeeper Provision to parties entitled to exculpation, logic dictates that the Court would have addressed Appellants' request for an explicit confirmation of that interpretation and included language in *Highland I* indicating its agreement. The Court did not. And, surely, the Court knew how to address the Gatekeeper Provision if it intended to say more than it did.

---

[20] It's implausible that the Court would materially and substantively amend the Injunction or Gatekeeper Provision—provisions this Court correctly recognized as critical and central to the Plan—on **zero** business days' notice without affording Appellee a chance to respond to the Petition for Rehearing. (The Petition for Rehearing was filed on the Friday before Labor Day, and the Court issued its revised opinion on the Tuesday after Labor Day, 2022.) It is far more reasonable to conclude that the Court believed it was making merely a ministerial change to its initial opinion.

### C.    Neither the Gatekeeper Provision nor the Injunction Releases Claims or Is Affected by the Court's Holding that the Exculpation Improperly Releases Non-Debtor Parties in Violation of Bankruptcy Code § 524(e) as Interpreted by *Pacific Lumber*

To put this Appeal in proper context, it is necessary to review the actual terms of the Exculpation, the Gatekeeper Provision, and the Injunction to determine what they do, who they cover, and how they are affected, if at all, by this Court's prohibition of certain non-debtor releases it found violated Bankruptcy Code § 524(e).

**Exculpation.** The Exculpation is found in Article IX.C of the Plan and, subject to carve-outs for bad faith, fraud, and negligence, provides in pertinent part:

> to the maximum extent permitted by applicable law, **no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Petition Date in connection with or arising out of** (i) the filing and administration of the Chapter 11 Case; (ii) the negotiation and pursuit of the Disclosure Statement, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan (including the Plan Supplement) or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Plan Distribution of any securities issued or to be issued pursuant to the Plan, including the Claimant Trust Interests, whether or not such Plan Distributions occur following the Effective Date; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation in connection with the foregoing clauses (i)-(iv) ….[21]

---

[21] (Emphasis added.) "Exculpated Parties" entitled to exculpation were

the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Independent Directors, (v) the Committee, (vi) the members of the Committee (in their official capacities), (vii) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (viii) the CEO/CRO; and (ix) the Related Persons of each of the parties listed in (iv) through (viii) ….

The Exculpation thus *releases* the Exculpated Parties from negligence claims for specified acts or omissions committed during the Bankruptcy Case. This Court, relying on its opinion in *Pacific Lumber,*[22] ruled that the Exculpation was unlawful because it *released* claims against certain non-debtors in violation of Bankruptcy Code § 524(e) reasoning that "the exculpation here partly runs afoul of [the § 524(e)] statutory bar on non-debtor discharge by reaching beyond Highland Capital, the Committee, and the Independent Directors. *See Pacific Lumber,* 584 F.3d 251–53. We must reverse and strike the few unlawful parts of the Plan's exculpation provision."[23]

**Injunction.** The Injunction is found in the first three paragraphs of Article IX.F of the Plan and provides:

> Upon entry of the Confirmation Order, all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, from taking any actions to interfere with the implementation or consummation of the Plan.
>
> Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, with respect to any Claims and Equity Interests, from directly or indirectly (i) commencing, conducting, or continuing in any manner any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor or the property of the Debtor, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, enforcing, or attempting to recover or enforce, by any manner or means, any judgment, award, decree, or order against the Debtor or the property of the Debtor, (iii) creating, perfecting, or otherwise enforcing in any manner, any security interest, lien or encumbrance of any kind against the Debtor or the

---

[22] *In the Matter of The Pacific Lumber Co.,* 584 F.3d 229 (5th Cir. 2009).

[23] *Highland I,* 48 F.4th at 435.

property of the Debtor, (iv) asserting any right of setoff, directly or indirectly, against any obligation due to the Debtor or against property or interests in property of the Debtor, except to the limited extent permitted under Sections 553 and 1141 of the Bankruptcy Code, and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

The injunctions set forth herein shall extend to, and apply to any act of the type set forth in any of clauses (i)-(v) of the immediately preceding paragraph against any successors of the Debtor, including, but not limited to, the Reorganized Debtor, the Litigation Sub-Trust, and the Claimant Trust and their respective property and interests in property.[24]

All bankruptcy reorganization plans contain an injunction, the purpose of which is to enforce the discharge that non-liquidating debtors are granted under Bankruptcy Code § 1141. Here, the Injunction prevents Enjoined Parties (essentially any entity holding a claim or equity interest against the bankruptcy estate or that otherwise appeared in the bankruptcy case, and their related parties) from interfering with the implementation or consummation of the Plan or otherwise asserting claims, liens, or other rights against the *Debtor* or any of its successors. As the Bankruptcy Court noted, the Injunction is "a policing mechanism to deter actions in violations [*sic*] of the discharge

---

[24] For purposes of the Injunction—the Plan defined "Enjoined Parties" thus:

"Enjoined Parties" means (i) all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor (whether or not proof of such Claims or Equity Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan), (ii) James Dondero ("Dondero"), (iii) any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which such Entity appeared and any other party in interest, (iv) any Related Entity, and (v) the Related Persons of each of the foregoing.

or otherwise inconsistent with the Plan."[25] The Injunction didn't implicate *Pacific Lumber* or Bankruptcy Code § 524(e) because the Injunction isn't a release. That's why this Court left the Injunction entirely intact. That's why this Court called the Injunction "sound."[26]

**Gatekeeper Provision.** The fourth paragraph of Article IX.F of the Plan is the Gatekeeper Provision, providing in pertinent part:

> no Enjoined Party may commence or pursue a claim or cause of action of any kind against any Protected Party that arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected Party … The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable and, only to the extent legally permissible and as provided for in ARTICLE XI, shall have jurisdiction to adjudicate the underlying colorable claim or cause of action.[27]

---

[25] ROA.20, Order Upon Remand at 8 (emphasis removed).

[26] *Highland I*, 48 F.4th at 435 ("Though the injunction and gatekeeping provisions are sound, the exculpation of certain non-debtors exceeds the bankruptcy court's authority. We reverse and vacate that limited portion of the Plan").

[27] For purposes of the Gatekeeper Provision, the Plan defined "Protected Parties" in pertinent part thus:

> "**Protected Parties**" means, collectively, (i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Reorganized Debtor, (v) the Independent Directors, (vi) the Committee, (vii) the members of the Committee (in their official capacities), (viii) the Claimant Trust, (ix) the Claimant Trustee, (x) the Litigation Sub-Trust, (xi) the Litigation

The Gatekeeper Provision requires that, before Enjoined Parties[28] can assert a claim against a Protected Party, they must first demonstrate to the Bankruptcy Court that the claim is colorable. If the Bankruptcy Court determines that a claim is colorable, the claim can either be prosecuted in the Bankruptcy Court, if jurisdiction exists, or in another court with competent jurisdiction. The Gatekeeper Provision does *not* (a) release any claims, (b) release any parties, or (c) prevent Enjoined Parties from asserting *any* claim that they believe they have against Protected Parties. Therefore, the Gatekeeper Provision does not implicate the Court's singular concern—that Bankruptcy Code § 524 prohibits *releasing* claims against certain non-debtors. To the contrary, the Court specifically stated that "[c]ourts have long recognized bankruptcy courts can perform a gatekeeping function."[29] That's why this Court left the Gatekeeper Provision entirely intact. That's why this Court called the Gatekeeper Provision "sound."

Despite that clear and unambiguous language, Appellants refer to the Gatekeeper Provision as the "Gatekeeper Injunction" throughout the Opening Brief. Building on the faulty premise that the Gatekeeper Provision is an *injunction*—it's not—Appellants argue that, if allowed to stand, the Gatekeeper Provision "protects a large list of persons

---

Trustee, (xii) the members of the Claimant Trust Oversight Committee (in their official capacities), (xiii) New GP LLC, (xiv) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (xv) the CEO/CRO; and (xvi) the Related Persons of each of the parties listed in (iv) through (xv) …

[28] *See* n.24 for the definition of "Enjoined Parties."

[29] *Highland I,* 48 F.4th at 439.

and entities, and their agents and employees, from and against virtually any claim and cause of action, including the post-confirmation business of Highland and the various trusts created under the Plan"[30] and is the "equivalent of prospective judicial immunity"[31] that prevents them from "unfettered access to proper legal redress and remedies."[32] These concerns rest on a fundamental mischaracterization of what the Gatekeeper Provision actually says and does.

Continuing with the fiction that the Gatekeeper Provision is a permanent injunction, Appellants argue that the Gatekeeper Provision is unlawful under *Pacific Lumber* because a plan injunction cannot release claims for which exculpation would be improper under Bankruptcy Code § 524(e). Similarly, *Zale* held that a permanent injunction prohibiting prosecution of third party claims was improper. Appellee agrees that an injunction prohibiting pursuit of claims not subject to a valid exculpation provision or relating to non-consensual release of third-party claims is improper in this Circuit. But the Gatekeeper Provision is not an injunction and this principle is inapplicable to this appeal.

The Exculpation, the Injunction, and the Gatekeeper Provision are three separate provisions of the Plan that act together to enforce Appellee's discharge under Bankruptcy Code § 1141, require Enjoined Parties to demonstrate to the Bankruptcy Court

---

[30] Opening Brief at 7.

[31] *Id.* at 17.

[32] *Id.* at 16.

that a claim is colorable before commencing litigation, and exculpate certain parties consistent with *Pacific Lumber*'s interpretation of § 524(e).[33] Moreover, the Exculpation protects Exculpated Parties (as limited by *Highland I*) while the Gatekeeper Provision protects Protected Parties. Rigorous analysis of each provision based on the Court's limitation of the lawfulness of a non-debtor release compels the conclusion that *Highland I* affected neither the Gatekeeper Provision nor the Injunction.

### D.    The Bankruptcy Court Properly Interpreted *Highland I* to Require Only the Definition of Exculpated Parties to Be Narrowed

In a thorough 19-page opinion, the Bankruptcy Court rejected Appellants' argument that *Highland I* "requires more surgery on the Plan than simply narrowing the defined term for 'Exculpated Parties.'" In so doing, the Bankruptcy Court thoroughly analyzed the Exculpation, Injunction, and Gatekeeper Provision.

With respect to the Exculpation, the Bankruptcy Court made two observations. First:

> Simply stated, the Exculpation Provision shielded a specified list of parties from any ***negligence liability*** for ***post-petition conduct*** in connection with the Highland Chapter 11 cases. The provisions effectuated ***an absolution of liability*** for the Exculpated Parties—but again, only for negligent

---

[33] The Court's characterization that the Exculpation is enforced by the Injunction and the Gatekeeper Provision and that such "plan protections" apply to "nearly all bankruptcy participants" is best viewed as a general recognition that the three provisions all offer a type of protection. *Highland I,* 48 F.4th at 427. But as discussed above, the Exculpation, Injunction, and Gatekeeper Provision address different issues and are independent of one another. (*See* Order Upon Remand at 5–6: The Exculpation, Injunction, and Gatekeeper Provision "**all had distinct functions; they were not in any way redundant**." (Emphasis added)).

conduct occurring on or after the Petition Date and in connection with the case.[34]

Second, the Bankruptcy Court pointed out that

> It is also notable that the Exculpation Provisions deal only with pre-Effective Date Parties (i.e., not any parties created by the terms of the Plan, such as the Litigation Trustee or Claimant Trustee).[35]

The Bankruptcy Court then reviewed the purpose behind the Injunction:

> Simply stated, the injunctions were ***not*** a release, or absolution of liability, or exculpation *per se*, but were, rather, an equitable device aimed at: (a) enforcing the discharge of the Debtor; (b) protecting the Debtor's property dealt with by the Plan; and (c) preventing interference with the implementation of the Plan. It was directed to claimants, equity interest holders, those who had participated in the Chapter 11 Case (including Mr. Dondero) and parties related to them. In sum—similar to so many Chapter 11 plans that this court sees—this provision was "belts and suspenders" to the Plan discharge and was essentially a ***policing mechanism to deter actions in violations of the discharge or otherwise inconsistent with the Plan***.[36]

Finally, the Bankruptcy Court analyzed the Gatekeeper Provision. First, the Bankruptcy Court contrasted the people and entities protected by the Exculpation— parties in existence before the Effective Date of the Plan—and the people and entities protected by the Gatekeeper Provision, which included several parties *created* under the Plan that didn't come into existence *until* the Effective Date.

> Notably, the list of "Protected Parties" [covered by the Gatekeeper Provision] was not identical to the list of "Exculpated Parties." Namely, the

---

[34] ROA.19, Order Upon Remand at 7 (emphasis in original).

[35] *Id.*

[36] *Id.* at 8.

"Protected Parties" list included several parties that were not even in existence prior to confirmation—such as the Claimant Trustee, Claimant Trust Oversight Board, and Litigation Trustee.[37]

The Bankruptcy Court then contrasted the Gatekeeper Provision to the Exculpation:

> In any event, simply put, the Gatekeeper Provision was somewhat of a tool to deal with any future, potential lawsuits that might be deemed to run afoul of the Injunctions. It did not effectuate a release or an absolution of any liability. Rather, as the "gatekeeper" nickname implies, it simply provided that a plaintiff would have to *ask* the gatekeeper before bringing a claim. No one would be allowed to bring a claim against a defined universe of "Protected Parties" without first asking the bankruptcy court. The bankruptcy court would have to determine, after notice, that such claim or cause of action represents a colorable claim against a Protected Party and specifically authorize such plaintiff to bring such claim against any such Protected Party. If the bankruptcy court were to deny permission, then, presumably, such denial could be appealed.[38]

In rejecting Appellants' arguments that revising the definition of Exculpated Parties was insufficient to conform to the changes required by *Highland I*, the Bankruptcy Court reviewed this Court's language in *Highland I*—including the language quoted in Section A above—and concluded that "[o]n balance, this court does not know how it could be clearer, that the Fifth Circuit was holding that the exculpation of certain parties violated section 524(e), but the other Plan Protections were 'sound.'"[39]

Appellants ignore the Bankruptcy Court's analysis and reasoning that led it to grant the Motion to Conform and, instead, focus their Opening Brief on sophistry and

---

[37] *Id.* at 10.

[38] *Id.* (emphasis in original).

[39] ROA.19, Order Upon Remand at 16.

a series of perceived inconsistencies, inferences, and mischaracterizations of *Highland I* that they argue compel reversal. Appellee now addresses these arguments.

### E.     Appellants' Argument that the Bankruptcy Court Lacks Jurisdiction to Act as a Gatekeeper Was Decided in *Highland I*

Appellants attempt to re-litigate whether the Bankruptcy Court has jurisdiction to act as a gatekeeper for claims it may not have jurisdiction to adjudicate. This Court has already ruled unambiguously on this issue. *Highland I* held that the Bankruptcy Court had jurisdiction to act as a gatekeeper even if it may not have jurisdiction to adjudicate the underlying claim. In so ruling, *Highland I* relied on the Court's prior ruling in *In re Villegas,* where this Court stated that

> We hold only that a party must continue to file with the relevant **bankruptcy court** for permission to proceed with a claim against the trustee. If a **bankruptcy court** concludes that the claim against a trustee is one that the court would not itself be able to resolve under *Stern,* that court can make the initial decision on the procedure to follow.[40]

Building on *Villegas,* this Court in *Highland I* rejected Appellants' argument that the Bankruptcy Court could not act as a gatekeeper because the Bankruptcy Court might lack jurisdiction to adjudicate the underlying claim, reasoning that "our precedent requires we leave that determination to the bankruptcy court in the first instance."[41] The Court's ruling was clear. The Bankruptcy Court has jurisdiction to act as a gatekeeper

---

[40] 788 F.3d at 158–59 (emphasis added).

[41] *Highland I,* 48 F.4th at 439.

and, if a claim passes the gate, the Bankruptcy Court can decide initially whether to exercise jurisdiction over the underlying claim.[42]

Appellants argue that *Highland I*'s holding that the Gatekeeper Provision is proper is predicated entirely on the *Barton* doctrine, which they say applies only to trustees and court-appointed fiduciaries, thereby showing that the Court must have intended to limit the Gatekeeper Provision to Exculpated Parties. While *Highland I* did analogize to the *Barton* doctrine in holding that the Bankruptcy Court had authority to act as a gatekeeper, the Court did not hold that its ruling was predicated on the *Barton* doctrine's applicability.[43] Moreover, in the more than one hundred years since the Supreme Court established it, the *Barton* doctrine has been extended to far more parties

---

[42] Appellants argue that this Court's statement is illogical because, if the Bankruptcy Court may not have jurisdiction to adjudicate the underlying claim, it can't have jurisdiction to determine whether the claim is colorable in the first instance. Appellants seem confused. There is nothing inconsistent or illogical with the Bankruptcy Court having jurisdiction to act as a gatekeeper, even if it doesn't have jurisdiction to adjudicate the underlying claim. *Villegas* and *Highland I* so hold.

[43] Moreover, as Appellee argued to this Court in *Highland I,* Bankruptcy Code §§ 105 and 1123(b)(6) provide authority for the bankruptcy court to perform a gatekeeping function. For example, in the *Madoff* cases, the bankruptcy court serves as the gatekeeper for determining whether claims of certain creditors against certain Madoff feeder funds are direct claims (that is, claim that may be brought by the creditor) or derivative claims (that is, claim that either can be brought only by the Madoff post-confirmation liquidation trust or have already been settled by the trust). *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 546 B.R. 284 (Bankr. S.D.N.Y. 2016). In the *General Motors* case, the bankruptcy court served as the gatekeeper to determine if defective ignition-switch claims could be asserted in litigation against New GM or only as a claim against Old GM. *See In re Motors Liquidation Co.,* 541 B.R. 104 (Bankr. S.D.N.Y. 2015); *In re Motors Liquidation Co.,* 568 B.R. 217 (Bankr. S.D.N.Y. 2017).

DOCS_NY:48599.8 36027/003

than trustees or court-appointed fiduciaries and is broad enough to cover the parties subject to the Gatekeeper Provision.[44]

### F.    Limiting the Gatekeeper Provision to Exculpated Parties Would Eviscerate the Gatekeeper Provision and Render It Meaningless

Two consequences would flow if the Court agrees with Appellants that the Gatekeeper Provision should be modified to protect only parties entitled to be exculpated under *Highland I,* which would render the Gatekeeper Provision effectively meaningless.[45] First, as the Bankruptcy Court noted,[46] *all* the Exculpated Parties ceased to exist as of the Effective Date. Highland was restructured as the Reorganized Debtor, the

---

[44] These parties have included debtors-in-possession (*Helmer v. Pogue,* 2012 U.S. Dist. LEXIS 151262 (N.D. Ala. Oct. 22, 2012)), a debtor's officers and directors (*Carter v. Rodgers,* 220 F.3d 1249, 1252 and n.4 (11th Cir. 2000); *Hallock v. Key Fed. Sav. Bank (In re Silver Oak Homes),* 167 B.R. 389 (Bankr. D. Md. 1994)), the debtor's employees (*Lawrence v. Goldberg,* 573 F.3d 1265, 1270 (11th Cir. 2009)), a debtor's attorney (*Lowenbraun v. Canary (In re Lowenbraun),* 453 F.3d 314, 321 (6th Cir. 2006); *Tufts v. Hay,* 977 F.3d 1204, 1209-10 (11th Cir. 2020)), and a post-confirmation plan administrator, consumer claims representative, and their respective agents (*In re Ditech Holding Corp.,* 2021 Bankr. LEXIS 2274 at *30 (Bankr. S.D.N.Y. August 20, 2021).

[45] This is exactly what Appellants want. *Highland I* affirmed the Bankruptcy Court's factual findings that the Gatekeeper Provision was to prevent parties owned, controlled, or related to James Dondero, including Appellants, from pursuing harassing, value-destructive litigation against the fiduciaries responsible for performing under the Plan. Appellants want desperately to be able to sue these people whenever and wherever they want. So far, the Gatekeeper Provision is serving the purposes it was intended to serve. Hunter Mountain Investment Trust ("**HMIT**," another Dondero-controlled entity) recently filed a motion in the Bankruptcy Court under the Gatekeeper Provision for a colorability determination on a new lawsuit against Appellee and other defendants. The Bankruptcy Court issued a lengthy ruling holding that the lawsuit is not colorable. HMIT has already appealed the Bankruptcy Court's order to the U.S. District Court for the Northern District of Texas.

[46] "Moreover, limiting the definition of 'Protected Parties' to be coterminous with the defined term 'Exculpated Parties' would mean that the Gatekeeper Provision would have no effect on any conduct that occurs after the Plan Effective Date. Why? ***Because the persons included in the defined term 'Exculpated Parties'—as now limited by the Fifth Circuit's ruling to include only the Debtor, the UCC, the UCC members, and Independent Directors—are all gone now***." ROA.29, Order Upon Remand at 17 (emphasis in original).

Creditor Committee disbanded, the Creditor Committee members were relieved of their duties, and the Independent Directors resigned.[47] Accordingly, the Gatekeeper Provision would not apply to any conduct occurring after the Effective Date, despite the Bankruptcy Court's findings, undisturbed on appeal, that the Gatekeeper Provision was critical to the success of the Plan.[48]

Second, it is primarily parties other than Appellee who need the Gatekeeper Provision. On the Effective Date of the Plan, Bankruptcy Code § 1141 discharged Appellee from all pre-Effective Date claims. Accordingly, the practical effect of watering down the Gatekeeper Provision as Appellants propose would be that the Gatekeeper Provision would apply only to non-negligence claims against the disbanded Creditor Committee, its members, and the Independent Directors.[49] In rejecting this interpretation of *Highland I*, the Bankruptcy Court stated that the Gatekeeper Provision is concerned with *future* lawsuits against entities the Plan *created* and that did not come into existence

---

[47] Independent Directors are protected by a different gatekeeper provision and exculpated for post-petition negligence under the Bankruptcy Court's January 9, 2020 order, which is final and not on appeal. *See Highland I,* 48 F.4th 438, n.15.

[48] In *Highland I,* this Court explicitly stated that it agreed with the Bankruptcy Court that the Injunction and Gatekeeper Provision were "legal, necessary under the circumstances, and in the best interest of all parties." 48 F.4th at 435.

[49] Appellants argue that a Gatekeeper Provision restricted to Exculpated Parties would still be meaningful because it would somehow prevent Exculpated Parties from being sued and incurring the time and expense to prove their exculpation. That makes no sense. Exculpated Parties (other than Appellee), who no longer exist, remain subject to suit for claims not sounding in negligence and still have to defend themselves against a colorability determination. The Gatekeeper Provision does not enforce the Exculpation. Rather, they are two different provisions that do two different things.

until the Plan effective date.[50] It is inconceivable that this Court in *Highland I,* having

determined that the Gatekeeper Provision was "sound," intended to eviscerate it and

render it effectively meaningless by mere implication.

### G.     The Court Should Not Consider the New Arguments Appellants Raise for the First Time on Appeal Seeking to Invalidate the Gatekeeper Provision

Appellants raise new arguments not ever before presented to either the Bankruptcy Court or this Court. Arguments about the Gatekeeper Provision raised for the

first time in this appeal, which pertain only to the scope of the mandate in *Highland I,*

are not preserved and are forfeited.[51] The adequacy of the factual findings to support

the Gatekeeper Provision was resolved by this Court in *Highland I* and is binding under

both the law-of-the-case doctrine and the rule that a three-judge panel is bound by a

prior panel's ruling.

### 1.     The Gatekeeper Provision Does Not Depend on Anyone Being Declared a Vexatious Litigant

*Highland I* refused to alter the Bankruptcy Court's detailed factual findings that

the Gatekeeper Provision is necessary to prevent harassing litigation by Dondero-affil-

iated entities from impeding performance under the Plan. Those findings served as the

---

[50] *See* ROA.29, Order Upon Remand at 17.

[51] *See, e.g., Roy v. City of Monroe,* 950 F.3d 245, 251 (5th Cir. 2020) ("Failure adequately to brief an issue on appeal constitutes waiver of that argument") (quoting *Procter & Gamble Co. v. Amway Corp.,* 376 F.3d 496, 499 n.1 (5th Cir. 2004)).

factual predicate on which this Court relied in *Highland I* to justify the Gatekeeper Provision under the circumstances of this case.

Appellants argue—for the first time in this appeal—that determining that Appellants and parties related to Mr. Dondero were "vexatious litigants" under applicable Fifth Circuit law was a necessary predicate to approving the Gatekeeper Provision. And yet Appellants acknowledge, as they must, that this Court explicitly stated that nothing in *Highland I* "should be construed to hinder the bankruptcy court's power to enjoin and impose sanctions on Dondero and other entities by following the procedures to designate them vexatious litigants."[52]

Undeterred, Appellants spill a lot of ink—belatedly and improperly—challenging the Bankruptcy Court's findings regarding the harassing conduct by James Dondero and his affiliated entities (including these Appellants) throughout this case. Appellants argue that, because the findings do not support a "vexatious litigant" finding under applicable Fifth Circuit law, they are legally insufficient to support the Gatekeeper Provision approved by the Bankruptcy Court.[53] There is nothing in *Highland I* or Fifth Circuit precedent to justify this restrictive view of Bankruptcy Court authority to approve

---

[52] *Highland I,* 48 F.3d at 439, n.19.

[53] Appellee disputes Appellants' argument that the factual record is insufficient to support a "vexatious litigant" finding for Appellants and all parties related to James Dondero and reserves its rights to seek such relief in accordance with applicable Fifth Circuit law.

DOCS_NY:48599.8 36027/003

a plan provision necessary to support a successful reorganization. Conversely, *Highland I's* determination that the Gatekeeper Provision is "sound" is enough to defeat this argument.

### 2. Asbestos-Related Channeling Injunctions Do Not Apply to This Appeal

Appellants argue that Bankruptcy Code § 524(g)—a statutory injunction that channels asbestos claims to a trust under certain conditions—restricts a bankruptcy court's ability to act as a gatekeeper. This argument again conflates an injunction with the Gatekeeper Provision. Section 524(g) simply doesn't apply here.[54]

### 3. The Gatekeeper Provision Doesn't Impose Requirements Other Than Colorability on Future Claims Against Protected Parties

Appellants also argue that, in addition to finding a claim colorable, the Bankruptcy Court also must "specifically authoriz[e] such Enjoined Party to bring such claim or cause of action" on some other, unstated ground. In other words, Appellants contend that obtaining that "blanket authorization" may require something more than the explicitly required colorability showing.

This Court should brook no attempt by Appellants to create ambiguity where none exists. The only fair reading of the Gatekeeper Provision is that the Bankruptcy

---

[54] Even if § 524(g) somehow applies, the Public Law implementing § 524(g) provides that "[n]othing in [Section 524(g)] shall be construed to modify, impair, or supersede any other authority the court has to issue injunctions in connection with an order confirming a plan of reorganization." Section 111 of Pub. L. 103-394, 108 Stat. 4113, *codified at* 11 U.S.C. § 524 note.

Court will authorize a party to pursue a claim if it determines the claim is colorable. It really is that simple. Appellants cite a recent decision in a different bankruptcy case, in which the court conditioned certain parties' pursuit of future claims on their establishment of a reserve for potential fee-shifting.[55] But that is not part of the Gatekeeper Provision in this case. Moreover, despite numerous opportunities to present these "blanket authorization" and "slippery slope" arguments to the Bankruptcy Court and this Court, Appellants failed to do so and have forfeited them.

## V.    CONCLUSION

This Court should affirm the Bankruptcy Court's order in all respects.

---

[55] Ruling that a bankruptcy court has the power to include a "gatekeeper provision" in a plan, which *Highland I* did, does not mean that *every* gatekeeper provision, no matter how drafted, is appropriate. Bankruptcy courts in the first instance, and appellate courts thereafter, can certainly police the appropriate limitations of any gatekeeper provision through litigation in the bankruptcy courts and, if necessary, on appeal.

October 5, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz
John A. Morris
Gregory V. Demo
Jordan A. Kroop
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Email: jpomerantz@pszjlaw.com
          jmorris@pszjlaw.com
          gdemo@pszjlaw.com
          jkroop@pszjlaw.com

-and-

**HAYWARD PLLC**
*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Appellee*

## CERTIFICATE OF COMPLIANCE WITH FRAP 32

1.    This document complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, including footnotes and excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 8,187 words.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally-spaced serif (Times New Roman) typeface at 14-point type (12-point for footnotes).

3.    Any required privacy redactions have been made under Circuit Rule 25.2.13, the electronic submission is an exact copy of the paper submission, and this document has been scanned for viruses and is free of them.

*/s/ Zachery Z. Annable*
Zachery Z. Annable

## CERTIFICATE OF SERVICE

I certify that, on October 5, 2023, the foregoing Brief of Appellee was electronically filed using the appellate CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished via CM/ECF.

*/s/ Zachery Z. Annable*
Zachery Z. Annable