No. 23-10534

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

IN THE MATTER OF HIGHLAND CAPITAL MANAGEMENT, L.P.
*Debtor*

HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.,
*now known as* NEXPOINT ASSET MANAGEMENT, L.P.;
NEXPOINT ADVISORS, L.P.,
*Appellants*

v.

HIGHLAND CAPITAL MANAGEMENT, L.P.,
*Appellee*

On Direct Appeal from the United States Bankruptcy Court for the
Northern District of Texas
Case No. 19-34054-sgj11

## APPELLEE'S OPPOSED MOTION TO STAY ISSUANCE OF
## MANDATE PENDING PETITION FOR WRIT OF CERTIORARI

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz
John A. Morris
Gregory V. Demo
Jordan A. Kroop
Hayley R. Winograd
10100 Santa Monica Blvd., 13th Fl.
Los Angeles, CA 90067
(310) 277-6910

**HAYWARD PLLC**
Zachery Z. Annable
10501 N. Central Expy.
Suite 106
Dallas, TX 75231
Tel: (972) 755-7108

*Counsel for Highland Capital Management, L.P.*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that:

(a)    There are no other debtors associated with this bankruptcy case other than Highland Capital Management L.P., and there are no publicly-held corporations that own 10% or more of Highland Capital Management L.P., which is not a corporation or a parent corporation;

(b)    According to the certificate contained in its opening brief, Appellant Highland Capital Management Fund Advisors, L.P. (now known as NexPoint Asset Management, L.P.) is a private, non-governmental party, whose owners, Highland Capital Management Services, Inc., Strand Advisors XVI, Inc., and Okada Family Revocable Trust, are also private, non-governmental parties; no publicly-held corporation owns 10% of more of the equity interests in any of these entities;

(c)    According to the certificate contained in its opening brief, Appellant NexPoint Advisors, L.P. is a private, non-governmental party, whose general partner, NexPoint Advisors GP, LLC, is also a private, non-governmental party wholly owned by James Dondero; no publicly-held corporation owns 10% of more of the equity interests in either NexPoint    entity;

(d)    The following listed persons and entities have an interest in the outcome of this case:

    (i)    Highland Capital Management, L.P.
            Appellee
            Counsel:    Pachulski Stang Ziehl & Jones LLP
                         Hayward PLLC
    (ii)    The Highland Claimant Trust, a Delaware trust, the beneficiaries of which comprise the creditors of Highland Capital Management, L.P.
            Indirectly interested party
            Counsel:    Pachulski Stang Ziehl & Jones LLP
                         Hayward PLLC

(iii)   NexPoint Advisors, L.P. and Highland Capital
        Management Fund Advisors, L.P.
        Appellants
        Counsel:   Munsch Hardt Kopf & Harr, P.C.

                                */s/ Zachery Z. Annable*
                                Zachery Z. Annable

## TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ........................................i

TABLE OF AUTHORITIES...................................................................iv

INTRODUCTION...................................................................................1

ARGUMENT ..........................................................................................2

    A.    Appellee's Petition Would Present A Substantial Question .............................................................................2

    B.    There Is Good Cause For A Stay .........................................10

CONCLUSION.....................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Airadigm Commc'ns, Inc.,*
519 F.3d 640 (7th Cir. 2008) ................................................................ 6

*Blixseth v. Credit Suisse,*
961 F.3d 1074 (9th Cir. 2020) ........................................................ 6, 8

*In re Crown Vantage, Inc.,*
421 F.3d 963 (9th Cir. 2005) ................................................................ 4

*Gordon v. Nick,*
No. 96-1858, 1998 WL 559734 (4th Cir. Sept. 2, 1998) ...................... 4

*Harrington v. Purdue Pharma L.P.,*
603 U.S. 204 (2024) ................................................................ *passim*

*In re Highland Cap. Mgmt., L.P.,*
48 F.4th 419 (5th Cir. 2022) .............................................................. 10

*Lawrence v. Goldberg,*
573 F.3d 1265 (11th Cir. 2009) ............................................................ 4

*In re Lowenbraun,*
453 F.3d 314 (6th Cir. 2006) ................................................................ 4

*In re PWS Holding Corp.,*
228 F.3d 224 (3d Cir. 2000) ................................................................ 6

*In re Seaside Eng'g & Surveying, Inc.,*
780 F.3d 1070 (11th Cir. 2015) ............................................................ 6

**Statutes and Rules**

11 U.S.C. § 524(e) ................................................................................ 5

Fed. R. App. P. 41(d)(1) ...................................................................... 1

Fifth Circuit Rule 8.9 ................................................................. 3, 4, 10

**Other Authorities**

American Bankruptcy Institute, Report of Commission to
  Study the Reform of Chapter 11 (2014) ..............................9

Brief for Respondents NexPoint Advisors, L.P. and NexPoint
  Asset Management, L.P., No. 22-631 (filed Feb. 10, 2023),
  https://perma.cc/X88Z-D85L....................................................7

Highland Capital Management, L.P., Petition for a Writ of
  Certiorari, No. 22-631 (filed Jan. 5, 2023),
  https://perma.cc/D87V-LHB8 ................................................7

NexPoint Advisors, L.P. and NexPoint Asset Management,
  L.P., Petition for a Writ of Certiorari, No. 22-669 (filed
  Jan. 16, 2023), https://perma.cc/XWP5-HFTJ.....................7

Stephen M. Shapiro, et al., *Supreme Court Practice* (11th ed.
  2019).................................................................................8

Supplemental Brief for NexPoint Advisors, L.P. and
  NexPoint Asset Management, L.P., No. 22-631 (filed June
  28, 2024), https://perma.cc/4S5F-MFNJ.....................7, 8, 9

**INTRODUCTION**

Pursuant to Federal Rule of Appellate Procedure 41(d) and Fifth Circuit Rule 8.9, Appellee Highland Capital Management, L.P. ("Highland") respectfully moves for a stay of the issuance of the mandate so that Highland may prepare and file a petition for a writ of certiorari in the Supreme Court of the United States.

Staying the issuance of the mandate for the filing of a petition for a writ of certiorari is appropriate when "the petition would present a substantial question" and when "there is good cause for a stay." Fed. R. App. P. 41(d)(1). Both criteria are met here. The panel's holding raises substantial and meritorious questions about the appropriate scope of gatekeeper protections under the *Barton* doctrine and the extent of a bankruptcy court's authority to exculpate non-debtors, which were not resolved by the Supreme Court's decision in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024).

Moreover, Highland will suffer irreparable harm if the mandate is not stayed. Appellants, and the man who controls them, James Dondero, have relentlessly filed lawsuit after lawsuit against Highland and the individuals who shepherded it through a successful bankruptcy and have

done so even with the protections of the Gatekeeper Provision in place. If those protections are removed, Dondero and his related entities are likely to unleash a torrent of frivolous litigation in a myriad of jurisdictions, forcing Highland and others to waste significant time and resources.

Dondero-related entities are the *only* parties that have tried to thwart the bankruptcy plan or litigate against Highland and its fiduciaries implementing the plan. On the other hand, a short stay to allow Highland to seek certiorari would not irreparably harm Appellants, who could continue to pursue any potentially meritorious claims against Highland and others while complying with the Gatekeeper Provision as they've been required to do for four years.

Highland has notified counsel for Appellants of this motion. They have indicated that Appellants oppose the motion.

## ARGUMENT

### A. Appellee's Petition Would Present A Substantial Question

A petition for a writ of certiorari presents a substantial question when "there is a reasonable probability that 4 members of the Supreme Court would consider the underlying issues sufficiently meritorious for the grant of certiorari" and "a substantial possibility of reversal of [this

Court's] decision." Fifth Cir. R. 8.9. Highland's petition for a writ of certiorari will present two such "sufficiently meritorious" challenges to the panel's opinion.

*First*, the panel's decision gives rise to a certworthy question about the scope of appropriate gatekeeper protections for non-debtors. The panel struck most non-debtors from the Gatekeeper Provision in Highland's plan. Op. 8. Though the panel recognized that the *Barton* doctrine allows a bankruptcy court to require prospective litigants to obtain the court's leave before filing claims in another court against certain entities, including non-debtors, it concluded that those gatekeeper protections may cover only certain limited non-debtor individuals. *Id.* at 10-11.

As the panel recognized, that limited view of the *Barton* doctrine is at odds with the decisions of other courts of appeals. The panel acknowledged that "[o]ther circuits have extended the *Barton* doctrine to protect a wider variety of court-appointed and court-approved fiduciaries and their agents," citing cases from the Fourth, Sixth, and Eleventh Circuits. *Id.* at 11 n.6. For instance, the Eleventh Circuit has held that gatekeeper protections under the *Barton* doctrine can protect

professionals hired by a bankruptcy trustee, as well as certain creditors who had financed the bankruptcy investigations. *Lawrence v. Goldberg*, 573 F.3d 1265, 1270 (11th Cir. 2009). Likewise, the Fourth Circuit has held that "the [*Barton*] doctrine is applicable to suits against the debtor's managing partner." *Gordon v. Nick*, No. 96-1858, 1998 WL 559734, at *2 (4th Cir. Sept. 2, 1998) (per curiam). And the Sixth Circuit has held that the *Barton* doctrine covers a bankruptcy trustee's lawyers. *In re Lowenbraun*, 453 F.3d 314, 321 (6th Cir. 2006). Though the panel didn't cite it, the Ninth Circuit has also disagreed with this Court's approach by applying the *Barton* doctrine to the trustee of a post-confirmation liquidating trust. *In re Crown Vantage, Inc.*, 421 F.3d 963, 973 (9th Cir. 2005). Given that the panel's decision contradicts at least four other circuits' precedents, there is a sufficiently meritorious question about the scope of the *Barton* doctrine and a substantial possibility that this Court's decision will be reversed. Fifth Cir. R. 8.9.

This question was not resolved by the Supreme Court's recent decision in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), because that decision concerned only whether a chapter 11 plan could *release* non-debtors from liability for pre-petition torts. The Gatekeeper

Provision at issue here does nothing of the sort. It requires only that a litigant with a history of litigiousness demonstrate that its claim is at least colorable before filing suit against a protected party. It does not *release* anyone from any claims. It is, therefore, entirely unlike the exculpation clauses that the Supreme Court considered in *Purdue Pharma*.

*Second*, the panel's decision gives rise to a certworthy question about the authority of bankruptcy courts to exculpate or release non-debtors from liability arising from the bankruptcy process itself. The panel's decision to narrow the Protected Parties for the Gatekeeper Provision was based on the *Highland I* panel's holding that the Highland plan's exculpation of certain non-debtors violated 11 U.S.C. § 524(e), which provides that a "discharge of a debt of the debtor does not affect the liability of any other entity on . . . such debt." Op. 12-13; 11 U.S.C. § 524(e). A certiorari petition will present a serious argument that the panel was wrong to do so because the Gatekeeper Provision does not release any claims, and so the bankruptcy court's authority to release non-debtors does not bear on its authority to gatekeep claims against non-debtors. But, even if the panel correctly equated the reach of

gatekeeper and exculpation clauses, there is a circuit split over whether a chapter 11 plan can exculpate certain non-debtors from liability short of gross negligence for conduct in connection with the filing and administration of the chapter 11 case and the consummation and implementation of the plan. This Court says no, but the Third, Seventh, Ninth, and Eleventh Circuits say yes.

Each of those circuits has held that a bankruptcy court has authority to exculpate or release non-debtors for conduct undertaken in connection with the bankruptcy itself without any conflict with Section 524(e). *Blixseth v. Credit Suisse*, 961 F.3d 1074, 1081-82 (9th Cir. 2020); *In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d 1070, 1076, 1078 (11th Cir. 2015); *In re Airadigm Commc'ns, Inc.*, 519 F.3d 640, 647, 656 (7th Cir. 2008); *In re PWS Holding Corp.*, 228 F.3d 224, 246-47 (3d Cir. 2000).

This is not the usual case in which Supreme Court review is highly speculative. Although the parties have agreed on little during the years-long fight over Highland's future, both sides agree that Supreme Court review is warranted. Both parties sought Supreme Court review of *Highland I*, and both sides agreed that Highland's petition should be

granted.[1] And the Supreme Court itself signaled interest in that issue by calling for the views of the Solicitor General. Docket No. 22-631 (May 15, 2023).

Even after the Supreme Court's decision in *Purdue Pharma*, both sides continued to agree that the circuit split cited in Highland's petition, and above, presents a certworthy issue. The parties filed supplemental briefs in the Supreme Court after *Purdue*. Once again, Appellants *agreed with Highland* that "*Purdue* confirms the need for this Court's review in these cases." Supplemental Brief for NexPoint Advisors, L.P. and NexPoint Asset Management, L.P., at 2, No. 22-631 (filed June 28, 2024), https://perma.cc/4S5F-MFNJ. Though Appellants argued strenuously that the decision in *Purdue Pharma* could be read to support this Court's *Highland I* decision, Appellants admitted that "[l]ower courts are unlikely to read *Purdue* as conclusively resolving this issue for

---

[1] *See* Highland Capital Management, L.P., Petition for a Writ of Certiorari, No. 22-631 (filed Jan. 5, 2023), https://perma.cc/D87V-LHB8; Brief for Respondents NexPoint Advisors, L.P. and NexPoint Asset Management, L.P., at 2, No. 22-631 (filed Feb. 10, 2023), https://perma.cc/X88Z-D85L (agreeing that the issue warranted certiorari); NexPoint Advisors, L.P. and NexPoint Asset Management, L.P., Petition for a Writ of Certiorari, No. 22-669 (filed Jan. 16, 2023), https://perma.cc/XWP5-HFTJ.

exculpation clauses." Supplemental Brief at 5. That is because several circuits "have held that releases and exculpations should be treated differently." *Id.* (citing *Blixseth*, 961 F.3d at 1081-85). Appellants therefore frankly acknowledged that, "[a]bsent further review, the circuit conflict is likely to persist." *Id.*

The Supreme Court denied certiorari then. But that denial should not be read as expressing a view on the certworthiness of that issue. It instead likely reflects the interlocutory posture of the case and the recency of *Purdue Pharma* at the time the Court acted on the petitions. The Supreme Court often prefers not to grant certiorari when a case is in an interlocutory posture. Stephen M. Shapiro, et al., *Supreme Court Practice* § 4.18 (11th ed. 2019). Similarly, the Court often wishes to allow issues to "percolate" in the lower courts before taking them up itself. *Id.* §§ 4.4(B); 6.37.(I).(1). But it may well be prepared to take up the issue now, especially given that the panel opinion here further extended this Court's reading of Section 524(e) to affect the Gatekeeper Provision, too.

Furthermore, Highland respectfully submits that the better view is that *Purdue Pharma* did not resolve the issue. For starters, as Appellants concede, "[t]he Court's decision in *Purdue* never expressly addressed

exculpation clauses. That omission was notable . . . ." Supplemental Brief at 5. Rather, the Court held that a sweeping release that exculpated the Sackler family from current and future opioid-related claims was outside the bankruptcy court's authority to include in a chapter 11 plan. *Purdue Pharma*, 603 U.S. at 211. That sort of global release, though, bears little resemblance to the exculpation provisions in Highland's original plan, which were limited to actions directly related to the Highland bankruptcy. *See* Op. 3 (quoting the conduct covered by the plan's exculpation provision).

Such bankruptcy-specific exculpations are frequently included in chapter 11 plans, particularly in contentious bankruptcies like this one. *See* American Bankruptcy Institute, Report of Commission to Study the Reform of Chapter 11, at 251 (2014). Because *Purdue Pharma* did not decide whether non-debtor releases limited to non-debtors' conduct related to the bankruptcy proceedings themselves were permissible, this circuit split persists. *Purdue Pharma*, 603 U.S. at 226 (acknowledging that the decision left other questions unresolved).

## B. There Is Good Cause For A Stay

There is good cause to stay the issuance of the mandate pending a petition for a writ of certiorari when there is "a likelihood that irreparable harm will result if [the Court's] decision is not stayed." Fifth Cir. R. 8.9. Highland faces irreparable harm if the mandate is issued.

The Gatekeeper Provision was necessary to prevent Highland's ousted founder James Dondero from unleashing a flood of frivolous litigation against the entities and individuals who guided Highland through its bankruptcy and are now carrying out its plan of reorganization. As the bankruptcy court found, Dondero is a "serial litigator" who threatened to "burn the place down" if he didn't get his way during the bankruptcy proceedings. *In re Highland Cap. Mgmt., L.P.*, 48 F.4th 419, 426, 428 (5th Cir. 2022). True to form, and even with the Gatekeeper Provision's protections, Dondero and entities that he controls, including Appellants, have filed more than fifty appeals to this Court and the district court. Dondero and his related entities have also filed suits in state and federal courts in New York and even the Royal Court of Guernsey over conduct related to Highland's bankruptcy proceedings.

If the Court's mandate issues, key entities and individuals who shepherded Highland through its bankruptcy will immediately lose the Gatekeeper Provision's protections. That means that there will be nothing to prevent Dondero from filing any number of new lawsuits in any jurisdiction no matter how frivolous the claims are. Dondero has proven time and time again that he is committed to interfering with Highland's reorganization (even after its consummation). Removing the Gatekeeper Provision's protections would give Dondero carte blanche to resume using meritless lawsuits as another means of derailing Highland's reorganization. That would force Highland and other prospective defendants to waste countless time and resources defending against that frivolous litigation.

A short stay to allow Highland to file a petition for a writ of certiorari, though, will not irreparably harm Dondero or Appellants. There is no harm in preventing a "serial litigant" from pursuing frivolous claims. And Dondero and his related entities can still pursue any meritorious claims that they may have against the Protected Parties (including the non-debtors struck by the panel). Under existing procedures, Dondero and others can still file their claims before the

bankruptcy court, which can stay further proceedings until the Supreme Court has a chance to decide whether to grant certiorari. In short, Appellants face far less harm—irreparable or otherwise—from a short stay than Highland will suffer if a stay is denied.

## CONCLUSION

Accordingly, Highland respectfully requests that the Court stay the issuance of the mandate to allow Highland to file a petition for a writ of certiorari.

Dated: May 5, 2025

PACHULSKI STANG ZIEHL & JONES LLP

Jeffrey N. Pomerantz
John A. Morris
Gregory V. Demo
Jordan A. Kroop
Hayley R. Winograd
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

-and-

HAYWARD PLLC

*/s/ Zachery Z. Annable*
Zachery Z. Annable
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Suite 106
Dallas, TX 75231
Tel: (972) 755-7108
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## CERTIFICATE OF COMPLIANCE

1. This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because this motion contains 2,203 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.2.

2. This motion complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E), Fed. R. App. P. 32(a)(5), and 5th Cir. R. 32.1 and the type style requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

*/s/   Zachery Z. Annable*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2025, the foregoing Motion was electronically filed using the Court's CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished via CM/ECF.

*/s/   Zachery Z. Annable*