No. 23-10534

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

IN THE MATTER OF HIGHLAND CAPITAL MANAGEMENT, L.P.
*Debtor*

HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.*,
now known as* NEXPOINT ASSET MANAGEMENT, L.P.;
NEXPOINT ADVISORS, L.P.,
*Appellants,*

v.

HIGHLAND CAPITAL MANAGEMENT, L.P.,
*Appellee.*

On Direct Appeal from the United States Bankruptcy Court for the
Northern District of Texas
Case No. 19-34054-sgj11

**APPELLEE'S REPLY IN FURTHER SUPPORT OF ITS
OPPOSED MOTION TO STAY ISSUANCE OF MANDATE
PENDING PETITION FOR WRIT OF CERTIORARI**

| | |
|---|---|
| **PACHULSKI STANG ZIEHL & JONES LLP** | **HAYWARD PLLC** |
| Jeffrey N. Pomerantz | Zachery Z. Annable |
| John A. Morris | 10501 N. Central Expy. |
| Gregory V. Demo | Suite 106 |
| Jordan A. Kroop | Dallas, TX 75231 |
| Hayley R. Winograd | Tel: (972) 755-7108 |
| 10100 Santa Monica Blvd., 13th Fl. | |
| Los Angeles, CA 90067 | |
| (310) 277-6910 | |

*Counsel for Highland Capital Management, L.P.*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that:

(a) There are no other debtors associated with this bankruptcy case other than Highland Capital Management, L.P., and there are no publicly-held corporations that own 10% or more of Highland Capital Management, L.P., which is not a corporation or a parent corporation;

(b) According to the certificate contained in its opening brief, Appellant Highland Capital Management Fund Advisors, L.P. (now known as NexPoint Asset Management, L.P.) is a private, non-governmental party, whose owners, Highland Capital Management Services, Inc., Strand Advisors XVI, Inc., and Okada Family Revocable Trust, are also private, non-governmental parties; no publicly-held corporation owns 10% of more of the equity interests in any of these entities;

(c) According to the certificate contained in its opening brief, Appellant NexPoint Advisors, L.P. is a private, non-governmental party, whose general partner, NexPoint Advisors GP, LLC, is also a private, non-governmental party wholly owned by James Dondero; no publicly-held corporation owns 10% of more of the equity interests in either NexPoint entity;

(d) The following listed persons and entities have an interest in the outcome of this case:

    (i)    Highland Capital Management, L.P.
            Appellee
            Counsel:    Pachulski Stang Ziehl & Jones LLP
                          Hayward PLLC

    (ii)   The Highland Claimant Trust, a Delaware trust, the beneficiaries of which comprise the creditors of Highland Capital Management, L.P.
            Indirectly interested party
            Counsel:    Pachulski Stang Ziehl & Jones LLP
                          Hayward PLLC

(iii) NexPoint Advisors, L.P. and Highland Capital
Management Fund Advisors, L.P.
Appellants
Counsel: Munsch Hardt Kopf & Harr, P.C.

                                                */s/ Zachery Z. Annable*
                                                Zachery Z. Annable

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................... 1

ARGUMENT ..................................................................................... 2

    I.    Highland's Forthcoming Petition Will Present Substantial Questions ........................................................ 2

    A.    The Questions Presented by Highland's Forthcoming Petition Are Ripe for Supreme Court Review ....................... 2

    B.    The Questions Presented by Highland's Forthcoming Petition Are Certworthy ....................................................... 4

    II.    Highland and Its Reorganization Will Suffer Irreparable Harm Without a Stay ........................................................... 9

CONCLUSION ................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Abbott v. Veasey, 580 U.S. 1104 (2017) ...................................................................... 4

Harrington v. Purdue Pharma L.P., 603 U.S. 204 (2024) ................................... 4, 5, 8

Highland Cap. Mgmt., L.P. v. NexPoint Asset Mgmt., L.P.,
 2024 WL 5202496 (N.D. Tex. Dec. 23, 2024) ......................................................... 11

In re Kmart Corp., 285 B.R. 679 (Bankr. N.D. Ill. 2002) ........................................... 10

In re LTL Mgmt., LLC, 645 B.R. 59 (Bankr. D.N.J. 2022) ........................................ 10

In re Highland Cap. Mgmt., L.P., 48 F.4th 419 (5th Cir. 2022) ................................... 7

SAS Overseas Consultants v. Benoit,
 2000 WL 140611 (E.D. La. Feb. 7, 2000) ............................................................... 10

South Park Independent School District v. United States, 439 U.S. 1007 (1978) ...... 6

Truck Ins. Exch. v. Kaiser Gypsum Co., Inc., 602 U.S. 268 (2024) ............................. 9

United States v. Broce, 488 U.S. 563 (1989) ............................................................... 3

United States v. Virginia, 518 U.S. 515 (1996) ........................................................... 3

Va. Mil. Inst. v. United States, 508 U.S. 946 (1993) ........................................... 3, 5, 6

Wrotten v. New York, 560 U.S. 959 (2010) .................................................................. 5

**STATUTES**

11 U.S.C. § 1123(b)(6) ................................................................................................ 7

11 U.S.C. § 524(e) ....................................................................................................... 7

**TREATISES**

Stephen M. Shapiro, et al., Supreme Court Practice § 4.18 (11th ed. 2019) ............... 2

# INTRODUCTION

This Court's opinions in *Highland I* and *Highland II* each acknowledged a circuit split with respect to an issue this Court decided. Appellants are on record saying that the Supreme Court's *Purdue Pharma* decision (which involved a third-party release in the mass-tort context) did not resolve the first circuit split as applied to this case (which involves protections for voluntary participants in the bankruptcy process). The Supreme Court has not yet had a chance to consider the second circuit split (which involves the scope of the Supreme Court's 1881 *Barton* decision and its progeny). Rather than address whether the circuit splits are certworthy, Appellants rest their opposition on a total misunderstanding of Supreme Court procedure. As to irreparable harm, Appellants tellingly do not deny that they—and James Dondero—are geared up to unleash a barrage of frivolous litigation aimed at the parties who were responsible for implementing Highland's reorganization. That litigation will burden and drain resources and unnecessarily delay the conclusion of the chapter 11 case. This Court should stay the mandate associated with its March 18, 2025, judgment pending the filing and disposition of Highland's forthcoming petition for writ of certiorari.

# ARGUMENT

## I. Highland's Forthcoming Petition Will Present Substantial Questions

### A. The Questions Presented by Highland's Forthcoming Petition Are Ripe for Supreme Court Review

Appellants' response proceeds from a basic misunderstanding of Supreme Court certiorari jurisdiction. As Appellants see it, when a court of appeals decides an issue and remands the case, then and only then can the issue be presented for Supreme Court review. *See* Opp. at 13–15 (arguing that such questions must be "raised, if at all," in a petition after the first appeal). If the Supreme Court denies certiorari after that first appeal, there is a "threshold barrier" that prevents the Justices from reviewing that same question after remand. *See id.* at 11–13. In short, they contend that legal questions decided in the first appeal are "not even reviewable" at the point when the case becomes final. *Id.*

That is not the law. "Denial of certiorari at the interlocutory stage of a proceeding is without prejudice to renewal of the questions presented when certiorari is later sought from the final judgment . . . ." Stephen M. Shapiro, et al., *Supreme Court Practice* § 4.18, at 4-58 (11th ed. 2019). Indeed, the Supreme Court "generally await[s] final judgment in the lower courts before exercising [] certiorari jurisdiction." *Va. Mil. Inst. v.*

*United States*, 508 U.S. 946 (1993) (Scalia, J., respecting the denial of certiorari) (noting that case remained interlocutory because the court of appeals had ruled on the merits but remanded on remedies). And denial of certiorari as to an earlier judgment does not preclude petitioner "from raising the same issues in a later petition, after final judgment has been rendered." *Id.*; *see also United States v. Virginia*, 518 U.S. 515, 530-31 (1996) (reviewing both the merits question resolved in the first decision and the post-remand decision on remedies); *United States v. Broce*, 488 U.S. 563 (1989) (reversing Tenth Circuit, on review of decision on appeal from remand, because an en banc decision remanding the case was in error).

Here, the parties petitioned for certiorari before the bankruptcy court—or this Court—had ruled on how to conform the plan to ruling in *Highland I*. The Plan Protections were the subject of ongoing litigation in the bankruptcy court and this Court while the petitions were pending at the Supreme Court. And those questions were finally decided only by this Court's recent decision in *Highland II*. Therefore, Appellants have it exactly backwards when they claim that it is "too late" for Highland to petition for Supreme Court review. Response Br. at 15. The issues are

actually now "better suited for certiorari," since the proceedings have advanced beyond an interlocutory posture. *Abbott v. Veasey*, 580 U.S. 1104 (2017) (statement of Roberts, C.J., respecting the denial of certiorari).

### B. The Questions Presented by Highland's Forthcoming Petition Are Certworthy

Appellants also make a number of arguments seeking to minimize the substantial nature of the questions that Highland will present in its petition. None is persuasive.

They first try to argue that *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), "put at least one of the questions raised by Highland to rest once and for all." Response Br. at 1, 16. But *Purdue* considered whether nondebtors could obtain a full release of liability for pre-petition torts—in effect, a bankruptcy discharge. 603 U.S. at 209. Nothing in *Purdue* addressed the separate and more modest questions of (1) whether a bankruptcy court can exculpate nondebtor participants from claims based on their conduct in the bankruptcy itself; or (2) whether a plan gatekeeper provision that covers persons charged with implementing a plan can be appropriate under certain circumstances. Indeed, the Supreme Court took pains to emphasize that it was *not* deciding that or

any other issue apart from the narrow issue actually presented in *Purdue*. *Id.* at 227 ("As important as the question we decide today are ones we do not.").

Less than a year ago, Appellants themselves argued to the Supreme Court that "[l]ower courts are unlikely to read *Purdue* as conclusively resolving this issue for exculpation" and "agree[d] that review of Highland's petition is warranted." Supplemental Brief for NexPoint Advisors, L.P. and NexPoint Asset Management, L.P. ("NexPoint Supplemental Br.") at 5, *Highland Cap. Mgmt., L.P. v. NexPoint Advisors, L.P.*, No. 22-631 (June 28, 2024). That issue is no less certworthy now.

Appellants next try to make the case that the Supreme Court's denial of Highland's prior petition means that Highland's forthcoming petition is not certworthy. Response Br. at 16–17. But a prior denial of certiorari "does not represent any expression of any opinion concerning the importance of the question presented." *Wrotten v. New York*, 560 U.S. 959, 960 (2010) (statement of Sotomayor, J., respecting denial of certiorari); *see also Va. Mil. Inst.*, 508 U.S. at 946 (emphasizing the

certworthiness of the question presented while agreeing that certiorari was not then proper).

In the face of black-letter law about what is proper to raise on a second petition for certiorari after a court of appeals has remanded a case, Appellants overread a single Justice's in-chambers opinion in a uniquely postured case as if it stated more than a case-specific obligation. In *South Park Independent School District v. United States*, 439 U.S. 1007, 1007-1012 (1978), then-Justice Rehnquist, joined by Justice Powell, published a six-page dissent from a denial of certiorari in a case involving reopening a 1970 consent decree in a desegregation case. Nothing was said in the dissent about whether the case was in an interlocutory posture or whether that factor might have influenced the Court's denial. Nothing was said about possibly granting review in the future. *Compare S. Park*, 439 U.S. at 1007–12, *with Abbott*, 580 U.S. 1104 (statement of Roberts, C.J., respecting denial of certiorari), *and Va. Mil. Inst.*, 508 U.S. at 946 (Scalia, J., respecting the denial of certiorari).

After a decision on remand and another appeal, the school district brought the "identical" issues up in a stay application. In the particular circumstances of that case, Justice Powell (who of course knew why his

and Justice Rehnquist's views had been in dissent in the prior denial) felt constrained to deny the application. 453 U.S. 1301, 1305 (1981) (Powell, J., in chambers). He did not state any general principle. That is a very far cry from this case, in which all any litigant or judge can know is that the Court denied the first petition in an interlocutory posture and that the second petition will raise the same issue and a new one, on which this Panel has acknowledged a circuit split.

At bottom, the patent certworthiness of the issues raised in Highland's forthcoming petition cannot be (and is not seriously) denied. This Court *itself* expressly recognized two different circuit splits related to a bankruptcy court's authority to protect nondebtor bankruptcy participants from liability. *Highland I* said that "there is a circuit split concerning the effect and reach of § 524(e)." *In re Highland Cap. Mgmt., L.P.*, 48 F.4th 419, 436 (5th Cir. 2022). And, although *Purdue* briefly referenced section 524(e), that provision was not at all the basis for the decision, which focused almost exclusively on the scope of 11 U.S.C. § 1123(b)(6). Accordingly, the circuit split over the meaning of section 524(e) persists—just as Appellants predicted it would. *See* NexPoint

Supplemental Br. at 5 (recognizing that the circuit conflict over that issue was likely to persist absent Supreme Court review).

And this Court's most recent decision in *Highland II* drew attention to the fact that "other circuits have extended the *Barton* doctrine to a wider variety of court-appointed and court-approved fiduciaries and their agents," but that "this circuit has never approved of broadening the *Barton* doctrine to cover such individuals." Op. at 11 n.6. *Highland II* thus recognizes the circuit split about the scope of the *Barton* doctrine, on which the Gatekeeper provision rests. Appellants' response brief is conspicuously silent on the Court's recognition of the *Barton* split.

Highland's forthcoming petition, therefore, offers the Supreme Court a clean vehicle to resolve two related circuit splits concerning the scope of allowable nondebtor protections in a bankruptcy case. Coming right on the heels of *Purdue Pharma*, Highland's forthcoming petition is the natural next case for the Supreme Court. By calling for the views of the Solicitor General on Highland's last petition, the Supreme Court has already signaled a genuine interest in the case. And four Justices are already on record recognizing the salient distinction between full releases of pre-petition debts (at issue in *Purdue*) and clauses exculpating

nondebtors "from liability for their work on the reorganization plan." *Purdue Pharma*, 603 U.S. at 264 (Kavanaugh, J. dissenting). These are important and recurring issues that arise in virtually every corporate bankruptcy of even modest complexity.

The issues presented in Highland's petition readily clear the "substantial question" threshold for a stay.

## II. Highland and Its Reorganization Will Suffer Irreparable Harm Without a Stay

Without a stay of the mandate, Appellants, James Dondero, and other entities under his control will continue to open additional fronts in his war to inflict harm on the persons tasked with implementing Highland's plan and delay the conclusion of the bankruptcy case. Such senseless litigation will irreparably harm Highland by wasting resources that should—and would be—distributed promptly if there was a check on the onslaught of protracted frivolous litigation in jurisdictions across the United States and abroad.

Appellants' assertion (at 18) that litigation costs can never constitute irreparable harm has no purchase in the bankruptcy context, where a prevailing goal is to "maximize the property available to creditors." *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268, 272

(2024). Contrary to Appellants' proposed bright-line rule, courts in the bankruptcy context "have repeatedly found irreparable harm . . . when actions brought against nondebtor officers and principals would distract them from the debtor's daily business affairs and divert resources from the debtor's reorganization efforts." *SAS Overseas Consultants v. Benoit*, 2000 WL 140611, at *4 (E.D. La. Feb. 7, 2000) (compiling cases). Courts have likewise found that irreparable injury exists where, as here, outside litigation would "impair reorganization efforts and drain resources and time." *In re LTL Mgmt., LLC*, 645 B.R. 59, 82 (Bankr. D.N.J. 2022); *see also In re Kmart Corp.*, 285 B.R. 679, 688 (Bankr. N.D. Ill. 2002) (extending the automatic stay to nondebtors where "proceedings against the nondebtor could cause irreparable harm to the debtor by diverting resources need [sic] for its reorganization").

Moreover, even a temporary loss of gatekeeper protection is an irreparable one. The purpose of the Gatekeeper Provision is to prevent the Protected Parties—who shepherded Highland through bankruptcy—from being pulled to far-flung forums to defend frivolous lawsuits filed by Dondero and his entities. Indeed, the bankruptcy court specifically found that such protection was necessary because otherwise those estate

fiduciaries would reasonably be "expected to incur costs that could swamp them and the reorganization based on the prior litigious conduct of Mr. Dondero and his controlled entities." Order Confirming Plan of Reorganization at 53, No. 19-34054 (Bankr. N.D. Tex. Feb. 22, 2021), ECF 1943. Even a temporary loss of gatekeeper protection would likely result in a flood of such abusive litigation designed to burden those nondebtor participants who have been critical to Highland's reorganization. The Protected Persons would need to respond, thus defeating the purpose of the Gatekeeper Provision. Notably, in their response, Appellants cannot even bring themselves to disavow the fact that Dondero is geared up to launch another barrage of litigation against the Protected Parties as soon as possible. *See* Opp. at 20–21 & n.3 ("reserv[ing] all rights" to file new suits after the mandate issues). That omission alone proves the need for a stay.

Last, and contrary to Appellants' argument, the district court's denial of vexatious-litigant status supports a stay to maintain the status quo pending action by the Supreme Court. The district court denied Highland's motion in large part because the court understood that the "bankruptcy court has already entered a Gatekeeper Order to prohibit

claims by Dondero." *Highland Cap. Mgmt., L.P. v. NexPoint Asset Mgmt., L.P.*, 2024 WL 5202496, at *2 (N.D. Tex. Dec. 23, 2024). In other words, the district court expressly found that it was "not necessary for [it] to act here where the bankruptcy court can and has," including by entering the Gatekeeper Provision. *Id*. Denying a stay now upsets those settled expectations—and risks yet more costly motion practice—in service of nothing but frivolous litigation against bankruptcy participants.

## CONCLUSION

Accordingly, Highland respectfully requests that the Court stay the issuance of the mandate pending the filing and disposition of a petition for a writ of certiorari.

Dated: May 22, 2025

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz
John A. Morris
Gregory V. Demo
Jordan A. Kroop
Hayley R. Winograd
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Zachery Z. Annable
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Suite 106
Dallas, TX 75231
Tel: (972) 755-7108
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

# CERTIFICATE OF COMPLIANCE

1. This reply complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(C) because this reply contains 2,304 words, excluding the parts of the reply exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.2.

2. This reply complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E), Fed. R. App. P. 32(a)(5), and 5th Cir. R. 32.1 and the type style requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(6) because this reply has been prepared in a proportionally spaced serif typeface (Century Schoolbook) in 14-point font.

<u>/s/ Zachery Z. Annable</u>

# CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2025, the foregoing reply was electronically filed using the Court's CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished via CM/ECF.

*/s/ Zachery Z. Annable*
